IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNIVERSAL HEALTH SERVICES, INC. and UNIVERSAL HEALTH SERVICES, INC. FLEXIBLE BENEFIT PLAN, UHS DENTAL COMPONENT,<br><br>        Plaintiffs<br><br>vs.<br><br>AETNA, INC. and PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>        Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>: Civil Action No. 02-2715<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## ORDER

AND NOW, this _____ day of _____, 2002, upon consideration of Defendant Aetna Inc.'s Motion for Reconsideration, and that the Order in question was entered before expiration of the time allotted under the rules for Aetna Inc. to file a response, it is hereby ORDERED that said motion is GRANTED. This Court's September 19, 2002 Order, which extended the time for Plaintiffs to serve process upon Aetna Inc., is VACATED.

BY THE COURT:


_____
CLIFFORD SCOTT GREEN
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNIVERSAL HEALTH SERVICES, INC.<br>and UNIVERSAL HEALTH SERVICES, INC.<br>FLEXIBLE BENEFIT PLAN, UHS DENTAL<br>COMPONENT,<br>　　　　　　　　　Plaintiffs<br>　　　vs.<br>AETNA, INC. and<br>PRUDENTIAL INSURANCE COMPANY<br>OF AMERICA,<br>　　　　　　　　　Defendants. | :<br>:<br>:<br>:<br>:<br>:   Civil Action No.  02-2715<br>:<br>:<br>:<br>:<br>: |

## DEFENDANT AETNA INC.'S ("AETNA") MOTION FOR RECONSIDERATION

Defendant, Aetna Inc. ("Aetna"), without waiver of and expressly preserving the matters asserted in its motion to dismiss being filed this day, moves for reconsideration of the Order entered on September 20, 2002, which was entered prior to the response time that Aetna would have had under the local rules of court for responding to motions. The accompanying memorandum of law further sets forth the substantial grounds for vacating the Order and denying Plaintiffs' motion for extension of the 120-day deadline for serving Aetna.[1]

OF COUNSEL:
ELLIOTT REIHNER SIEDZIKOWSKI
　& EGAN, P.C.

Respectfully submitted,

/s/ Frederick P. Santarelli
JOHN M. ELLIOTT
FREDERICK P. SANTARELLI
Union Meeting Corporate Center
925 Harvest Drive
Blue Bell, PA  19422
(215) 977-1000
Counsel for Defendant, Aetna Inc.

DATED: September 23, 2002

---

[1] Plaintiffs' motion was docketed September 9, 2002. Local Rule 7.1 provides a 14-day response time for motions, and Fed.R.Civ.P. 6 adds 3 days if served by mail. Thus, even if the motion were served by mail on September 5, 2002 (prior to being docketed September 9), the respondent would have until today, September 23, 2002, to file a response. Further, if September 9 is deemed the starting date, the respondent would have until today to file a response. Unfortunately, the Court granted the requested extension by Order signed September 19, 2002, just 10-days after the motion was docketed, and prior to Aetna filing its response, which was being prepared for timely filing on September 23, 2002.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNIVERSAL HEALTH SERVICES, INC. and UNIVERSAL HEALTH SERVICES, INC. FLEXIBLE BENEFIT PLAN, UHS DENTAL COMPONENT,<br><br>　　　　　　　　　　　Plaintiffs<br><br>　　vs.<br><br>AETNA, INC. and PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>　　　　　　　　　　　Defendants. | Civil Action No. 02-2715 |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT AETNA INC.'S MOTION FOR RECONSIDERATION

Defendant, Aetna Inc. ("Aetna"), hereby submits this Memorandum of Law in support of its Motion for Reconsideration of the Court's September 19, 2002 Order (entered on September 20, 2002), which the Court issued prior to the response time that Aetna would have been allotted under Court rules.[1]

### I.   INTRODUCTION

Plaintiffs are Universal Health Services, Inc. ("Universal") and one of its employee welfare benefit plans (collectively, "Plaintiffs"). Universal is a multi-billion dollar corporation, which has substantial resources with which to access, prosecute, monitor and direct any litigation it chooses to pursue in this or any other court.

On May 7, 2002, Universal improperly commenced this action, after this Court had already dismissed a virtually identical case docketed at 02-cv-914. After filing this

---

[1] Plaintiffs' motion was docketed September 9, 2002. Local Rule 7.1 provides a 14-day response time for motions, and Fed.R.Civ.P. 6 adds 3 days if served by mail. Thus, even if the motion were served by mail on September 5, 2002 (prior to being docketed September 9), the respondent would have until today, September 23, 2002, to file a response. Further, if September 9 is deemed the starting date, the respondent would also have until today to file a response. Unfortunately, the Court granted the requested extension by Order signed September 19, 2002, just 10-days after the motion was docketed, and prior to Aetna filing its response which was being prepared for timely filing on September 23, 2002.

case, Plaintiffs did absolutely nothing to advance it. In fact, despite Rule 4(m) providing a generous 4 month-long period within which to take such basic action as properly serving the complaint, Plaintiffs neglected to do so. As set forth in the pending motions to dismiss filed by Aetna today, and a similar motion filed by the other named defendant, Prudential Insurance Company of America ("PICA"), this case should never have been filed at all, as it is plainly barred on its face by *res judicata,* applicable statutes of limitations and is otherwise meritless.[2]

---

[2] As set forth in PICA's pending motion to dismiss, Plaintiffs also delayed any service on PICA, and then flagrantly disregarded Rule 4 when new counsel purported to issue his own summons, by typing Michael Kunz' name on a kind of "home made" form, and mailing it to some office in New Jersey that is not even PICA's registered address as any minimal investigation of public records would have readily disclosed. Furthermore, it is otherwise patently deficient, as any cursory due diligence inquiry of publicly available records would have readily shown. Universal's new counsel mailed the purported "summons" not to PICA's duly registered address for service of process, but to some office location in Roseland, New Jersey. Nor was it addressed or received by any officer of PICA or other authorized agent for service of process, whose name and address is also readily identifiable from any cursory inquiry into publicly available files. *See* Exhibit "1" (copy of the original "Certificate of Compliance" readily issued on 9/18/02, upon request of undersigned counsel, by the State of New Jersey, Department of Banking and Insurance, and certifying at Para. 2 thereof the publicly available information identifying the "home office of [PICA] . . . and the name of the agent therein and in charge thereof upon whom service of process may be served against [PICA].") *See Hemmerich Industries, Inc. v. Moss Brown & Co., Inc.,* 114 F.R.D. 31 (E.D.Pa. 1987)(attempted service on out of state corporation under Pennsylvania Rule 403 requires plaintiff to establish that "the individual served was an executive officer, manager, person in charge of the place of business, or an agent authorized in writing to receive service of process for the corporation. The fact that there may have been actual notice does not affect the result.")

Such fundamental failures to perform minimal due diligence to comply with Rule 4 have routinely resulted in dismissals, even for *pro se* litigants, and a multi-billion dollar sophisticated corporate litigant like Universal should be likewise held to the rules. *See, e.g., Petrucelli v. Bohringer and Ratzinger,* 46 F.3d 1298, 1306-07 (3rd Cir. 1995) (confirming that "half-hearted efforts" by counsel to effect service of process prior to the 120-day deadline does not excuse the delay; also stating: "Even when delay results from inadvertence of counsel, it need not be excused . . . the federal plaintiff's lawyer is not to take any chances. Treat the 120 days with the respect reserved for a time bomb."); *Ayres v. Jacobs & Crumplar, P.A.,* 99 F.3d 565 (3rd Cir. 1996) (*pro se* plaintiff's complaint dismissed for failure to follow what plaintiff attempted to downplay as mere "technical niceties" of Rule 4); *McGann v. State of New York,* 77 F.3d 672 (2d Cir. 1996) (*pro se* prisoner's complaint dismissed for failure to timely effect service, where the *pro se* litigant neglected to include a proper "acknowledgment of service" form with the complaint as required by Rule 4). Apparently recognizing these failures, new counsel for Universal has, regrettably, denigrated to leveling personal, ad hominen attacks on the undersigned defendants' counsel, in a more recently filed 9/20/02 "Second Motion" for extension as to service on PICA. As appropriate, Defendants will respond separately to said "Second Motion", which contains several inaccurate assertions, within the time allotted under the applicable rules.

2

As for Aetna, although it has a local place of business here in Montgomery County, Universal made no effort at all to accomplish proper service under Rule 4 within the 120-day deadline, as conceded in Universal's September 9, 2002 motion for extension of the deadline. ***Indeed, Universal waited until after the last day of the 120-day period to even file a motion for extension*** (the last day fell on September 4, 2002). Tellingly, Universal's 9/9/02 motion for an extension fails to identify any plausible excuse whatsoever for it and its counsel disregarding this basic rule. Universal merely resorts to casting generalized blame on its original lawyer and hired a new one, ***without explaining why the original lawyer failed to comply with the rules.*** This is not and should never be considered an acceptable tactic for circumventing the rules, lest rules could always be disregarded with impunity.

This is particularly so for a well-funded and legally sophisticated litigant such as Universal, which is certainly no ingénue to litigation and presumably has the ability to retain and direct competent counsel. Indeed, by omission Plaintiffs' motion concedes there is no excuse for the neglect of chosen counsel, Ronald Meyer, or that of its new counsel. Universal makes no attempt at all to justify the neglectful violation of Rule 4(m)'s deadline. Under these circumstances, controlling Third Circuit precedent confirms there can be no "good cause" under Rule 4(m) to warrant any extension and the case should be dismissed. *Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1306-07 (3rd Cir. 1995) (confirming that "half-hearted efforts" by counsel to effect service of process prior to the 120-day deadline does not excuse the delay; also stating: "Even when delay results from inadvertence of counsel, it need not be excused . . . the federal

plaintiff's lawyer is not to take any chances. Treat the 120 days with the respect reserved for a time bomb.")

Court after court, in case after case, has repeatedly reaffirmed that attorneys or litigants who neglect to follow Rule 4's summons and service requirements are not to be excused for such reasons. Indeed, even *pro se* litigants are not afforded such leniency from Rule 4's requirements. *See, e.g., Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565 (3rd Cir. 1996) (*pro se* plaintiff's complaint dismissed for failure to follow what plaintiff attempted to downplay as mere "technical niceties" of Rule 4); *McGann v. State of New York*, 77 F.3d 672 (2d Cir. 1996) (*pro se* prisoner's complaint dismissed for failure to timely effect service, where the *pro se* litigant neglected to include a proper "acknowledgment of service" form with the complaint as required by Rule 4).

Regrettably, rather than acknowledging the errors and dealing with them, Plaintiffs' new counsel has reacted to their failures by personally and unprofessionally attacking opposing counsel—actually going so far as making untrue *ad hominen* attacks on counsel's integrity. *See* Plaintiffs' 9/20/02 Second Motion for Extension, Para. 14, *and* Memorandum of Law in support thereof, p. 2, which the undersigned received today.

At the same time, Universal's new counsel very recently forwarded a letter directly to chambers, apparently by fax on September 19, 2002, enclosing a copy of the motion. Unfortunately, although Universal copied the undersigned defendants' counsel on that communication to chambers, the copy was mailed rather than faxed to defendants' counsel. On the same day, before defendants' counsel even received the letter in the mail, this Court apparently signed the Order granting the extension.

4

In furtherance of its unsupported 9/9/02 motion for extension, Universal's letter to chambers advised that Universal's original chosen counsel, Ronald K. Meyer, supposedly "disappear[ed]", and that Universal's "last contact with Mr. Meyer was during mid-May, 2002 and we have been unable to locate him or his file." However, the letter to chambers offers no explanation of what, if any, efforts Universal has made to locate the supposedly "disappeared" Mr. Meyer. While alleging it has had no contact with Meyer since "mid-May", Plaintiffs' 9/9/02 motion offers no explanation as to whether it even *attempted* to communicate with Mr. Meyer for so many months, or whether it did anything diligence would require in monitoring and overseeing this action. Indeed, in Plaintiffs' 9/20/02 "Second Motion" for extension, which was received today, Plaintiffs still dodge this issue.

The suggestion that there are "unusual facts surrounding Mr. Meyer's disappearance" is, itself, unusual. After reading this letter, the undersigned defendants' counsel simply dialed Mr. Meyer's phone number as indicated on the complaint, and actually spoke to Mr. Meyer's son, who stated that although Mr. Meyer was out at the moment, he expected him to return that evening. If, as Universal alleges, it is "unable to locate" Mr. Meyer, then it is highly questionable whether Plaintiffs or their new counsel have made any reasonable efforts to do so. At a minimum, Plaintiffs should plead what efforts they or their new counsel supposedly made, so that this Court and defendants (and any appellate body) may have an opportunity to evaluate them for the "good cause" determination, *before* thrusting the defendants and the Court into more costly litigation over this meritless case.

As a result of Universal's apparent failure to find out what, if any, excuse there may be for the patent failures to comply with Rule 4 by Universal itself, by Mr. Meyer and by Universal's new counsel, this Court has nothing with which to evaluate whether Universal has met its burden to show there is "good cause" for extending the deadline under Rule 4(m), or whether this is merely another case in which the counsel or litigant simply neglected to follow rules and thus the case should be dismissed. *See, e.g., Petrucelli; Ayres; McGann.*

In any event, Universal obviously has known of the neglect of its counsel Mr. Meyer sufficiently in advance of the expiration of the 120-day deadline. Indeed, new counsel entered an appearance August 22, 2002. Certainly at least as of that time, Universal would have known that it never served the complaint. Certainly at least as of that time, Universal could have taken the relatively simple action of obtaining a proper summons, signing the complaint through an authorized attorney, and then driving it and the complaint over to Aetna (which has a local, readily accessible place of business for service) before the 120-day deadline would expire weeks later. Plaintiffs did none of this. In fact, despite knowing for some time now that the complaint was never signed by an attorney authorized to practice, Plaintiffs have to this day failed to correct that known deficiency, such that there presently continues to be no complaint before this Court that is subject to the requisite due diligence and investigation under Rule 11.

Presumably, the sophisticated Universal, which has in-house counsel, would have investigated the matter well *before* August 22, 2002 when new counsel entered an appearance, and timely complied with all the rules, including Rule 11 in addition to Rule 4.

6

To the extent Universal's September 19, 2002 fax to chambers also injects the fact that "Mr. Meyer has not been a member of the Pennsylvania Bar since 1996," as a blame diversion tactic, that is a red herring on the issue of whether there is "good cause" under Rule 4(m) for Mr. Meyer's and Universal's failure to serve the complaint within 120-days. Such diversions of blame should not divert this Court from the real issue. There is no allegation that Mr. Meyer was incapacitated physically or mentally from performing this simple task. In any event, to the extent Universal now wants to blame its chosen counsel (Mr. Meyer) for this lack of diligence, it is just as likely that Universal itself is independently culpable for hiring Mr. Meyer. Obviously, Universal has access to substantial legal resources. A sophisticated, well-funded party such as Universal – not defendants or this court -- should bear the consequences of Universal's own decisions, and should not be presumed blameless, particularly where Universal nevertheless had an opportunity to serve within the 120-day deadline, but still failed to do so.

Because Universal has not alleged any grounds for its motion, other than to try to divert blame on Mr. Meyer without any further explanation, this Court should vacate the Order dated September 19 and entered September 20, 2002. Plaintiffs plead absolutely nothing whatsoever that could possibly support any finding of "good cause" under Rule 4(m).

Even more disturbing is the fact that Universal has admittedly known for at least a month and likely longer that Mr. Meyer was not authorized to practice law when he filed this suit; but, to this day Universal has not secured the signature of an authorized attorney on the complaint to vouch for the merits of this action. Respectfully, Aetna submits that the good faith due diligence required by Rule 11 should lead an attorney to voluntarily

dismiss the complaint, rather than force defendants and this Court to incur the expenses and resources of litigating its inevitable dismissal.[3]

## II.   ARGUMENT

### A.   Standard For Reconsideration.

Rules 59(e) and 60(b) allow judges to reassess the basis of a decision. *Ruscavage v. Zuratt*, 831 F. Supp. 417, 418 (E.D. Pa. 1993). A district court will grant a party's motion for reconsideration where: (1) there is new evidence that was not previously available, (2) there is an intervening change in controlling law, *or* (3) there is a need to correct a clear error of law or to prevent manifest injustice. *Dodge v. Susquehanna Univ.*, 796 F. Supp. 829, 830 (M.D. Pa. 1992).

For example, when an argument raised in a party's reconsideration motion was insufficiently developed in the party's earlier brief, the court will grant the motion for reconsideration. *GE Capital Mortg. Serv. v. Pinnacle Mortg. Serv.*, 897 F. Supp. 854, 860-61 & n.2 (E.D. Pa. 1995); *Panna v. Firstrust Sav. Bank*, 760 F. Supp. 432 (D.N.J. 1991). A motion to reconsider is also proper when the court has misunderstood a party's position. *West v. Boeing Co.*, 851 F. Supp. 395 (D. Kan. 1994); *Voelkel v. General Motors Corp.*, 846 F. Supp. 1482, 1483 (D. Kan.), *aff'd* 43 F.3d 1484 (10th Cir. 1994).

In *Starr v. JCI Data Processing, Inc.*, 767 F. Supp. 633, 636 (D.N.J. 1991), the court granted reconsideration because the motion presented an important argument, not highlighted in the movant's initial brief. The movant showed that the matter overlooked,

---

[3] Incredibly, Plaintiffs now say they do not even have the file for their case. *See* Plaintiffs' 9/20/02 "Second Motion" for extension. If that is true, and if it knows now the complaint was filed by a lawyer not authorized to practice, it is ironic – indeed, questionable -- for new counsel to take the position that the complaint itself has merit and to essentially vouch for it by moving for new summonses based on it, while at the same time, try to reap benefit from Mr. Meyer's status by self-servingly claiming he acted inappropriately otherwise. Plaintiffs cannot have it both ways in this Court. If Mr. Meyer prejudiced Universal, Plaintiffs' remedy lies not against Aetna or PICA in this litigation.

if considered by the court, "might reasonably have altered the result reached . . .." *Id.* at 635. *See also Resolution Trust Co. v. Moskowitz*, 868 F. Supp. 634 (D.N.J. 1994; *SmithKline Beckman Corp. v. Pennex Products Co., Inc.*, 103 F.R.D. 539 (E.D. Pa. 1984).

Courts have also reconsidered previous decisions even when the "motion for reconsideration does not rely upon any of the three grounds which are a basis for a Rule 59(e) motion . . .." *McDowell Oil Service v. Interstate Fire & Cas. Co.*, 817 F. Supp. 538, 541 (M.D. Pa. 1993) (court reconsidered its denial to remand case when plaintiff raised a new issue not previously considered by the court).

Here, the Court obviously had no opportunity to receive and review the defendants' positions on the motion to extend the 120-day deadline. And, as set forth below, we respectfully submit that the applicable law and the circumstances here compel this Court to deny Plaintiffs' motion in exercising its discretion on this issue.

### B. There Is No Good Cause Under Rule 4(m) For Extending The Already Lengthy 120-Day Deadline For Effecting Service.

As set forth in the motion to dismiss being filed today, Plaintiffs' complaint lacks merit on its face, and should never have been filed by any attorney conducting a cursory due diligence. Indeed, Rule 4(m), in addition to the other grounds set forth in the motions to dismiss of Aetna and PICA, warrant dismissal.

To the extent Rule 4(m) provides for extensions of this 120-day deadline, a proper analysis pursuant to the procedure outlined by the Third Circuit should compel this Court to deny the extension. Rule 4(m) provides:

> **Time Limit for Service.** If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or

9

> on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

In *Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1305 (3rd Cir. 1995), the Third Circuit held that only if "good cause" exists is the District Court required to extend the 120-day deadline for service. *Id.* at 1305. Absent a finding of "good cause", the Court has discretion in deciding whether to dismiss the action or extend time for service. *Id.* The Third Circuit gave the following specific directions to District Courts, when presented with such motions for extension of the 120-day deadline:

> When entertaining a motion to extend time for service, the district court ***must*** proceed in the following manner. First, the district court should determine whether good cause exists for an extension of time. If good cause is present, the district court must extend time for service and the inquiry is ended. If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service.

*Petrucelli*, 46 F.3d at 1305.

The Third Circuit also cautioned that, even if a statute of limitations would bar refiling the action, this does not prevent the Court from dismissing the case for violating the 120-day deadline:

> We emphasize that the running of the statute of limitations does not require the district court to extend time for service of process. Rather, absent a finding of good cause, a district court may in its discretion still dismiss the case, even after considering that the statute of limitations has run and the refiling of an action is barred.

*Petrucelli*, 46 F.3d at 1306.

The plaintiff in *Petrucelli* made substantial efforts at compliance in comparison to the Universal's patent disregard of the Rules. There, the plaintiff employed a professional process serving company, and served the summons and complaint on the Secretary of State of Oklahoma, who issued a certificate of proof of service to the plaintiff. The plaintiff's counsel was also verbally assured by the office of Secretary of State that service had been made.

The Third Circuit noted that "Petrucelli, however, made several inexcusable errors." *Id.* at 1306. Among other things, in concluding the plaintiff failed to establish "good cause" for an extension of the 120-day deadline, the Third Circuit noted: "A prudent attorney exercising reasonable care and diligence would have inquired into the matter further when it was obvious that the acknowledgment form was not forthcoming." *Id.* at 1307. The Third Circuit explained:

> We have previously held that reliance upon a third party or on a process server is an insufficient basis to constitute good cause for failure to timely serve, and is also an insufficient basis for granting an extension of time to effect service. [citations omitted]. We have also held that " 'half-hearted' efforts by counsel to effect service of process prior to the deadline do not necessarily excuse a delay, even when dismissal results in the plaintiff's case being time-barred due to the fact that the statute of limitations on the plaintiff's cause of action has run." [citation omitted].

*Petrucelli*, 46 F.3d at 1307.

The Third Circuit explained further that "[e]ven when delay results from inadvertence of counsel, it need not be excused." *Petrucelli*, 46 F.3d at 1307. The Court cautioned: "Further, we have previously cautioned that, "[t]he lesson to the federal plaintiff's lawyer is not to take any chances. Treat the 120 days with the respect reserved for a time bomb." *Id.*

11

Other Courts confirm that compliance with Rule 4 is not some "technicality" that Plaintiffs can so casually regard. "A showing of good cause [under Rule 4(m)] requires at least 'excusable neglect' –good faith and some reasonable basis for noncompliance with the rules. [citations omitted]. When counsel has ample notice of a defect in service, does not attempt an obvious correction, and chooses to defend the validity of the service attempted, there is no good cause for the resulting delay if that method of service fails." *Adams v. AlliedSignal General Aviation Avionics*, 74 F.3d 882, 887 (8th Cir. 1996) (finding that where public information and review of the rules would have revealed how to effect proper service, "plaintiffs' insufficiency of service was willful, not inadvertent").

Tellingly, Plaintiffs' recent 9/20/02 "Second Motion" for an extension resorts to unprofessional name calling against the undersigned counsel and blame diversionary tactics for Universal's and its own counsel's failures. Indeed, even after new counsel requested the undersigned counsel to accept service, it failed to do so properly by forwarding the "acknowledgment of service" form and proper notices dictated for such procedure under Rule 4. As the caselaw has made clear time and again, these rules are not merely "technical niceties", and even *pro se* litigants are held to them. *See, e.g., Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565 (3rd Cir. 1996) (*pro se* plaintiff's complaint dismissed for failure to follow what plaintiff attempted to downplay as mere "technical niceties" of Rule 4); *McGann v. State of New York*, 77 F.3d 672 (2d Cir. 1996) (*pro se* prisoner's complaint dismissed for failure to timely effect service, where the *pro se* litigant neglected to include a proper "acknowledgment of service" form with the

complaint as required by Rule 4). Universal should not be treated differently than any other sophisticated litigants in this Court.

Universal has chosen its strategy of trying to justify its own failures and otherwise blame others for them. But, as the Court in *Adams* stated: "At some point, a litigant must bear the consequences of conscious strategic or tactical decisions of this kind." *Adams*, 74 F.3d at 887. Here, the proper consequences are dismissal of this action under Rule 4(m), or pursuant to the other grounds that are set forth in the motion to dismiss being filed today by Aetna, as well as the motion to dismiss that was filed by PICA on September 16, 2002.

### III.     CONCLUSION

For all of the foregoing reasons, Aetna respectfully requests that this Court vacate the Order that was entered September 20, 2002, and deny Plaintiffs' September 9, 2002 motion to extend the time for service.

|  |  |
|---|---|
| OF COUNSEL:<br>ELLIOTT REIHNER SIEDZIKOWSKI<br>& EGAN, P.C. | Respectfully submitted,<br>/s/Frederick P. Santarelli<br>JOHN M. ELLIOTT<br>FREDERICK P. SANTARELLI<br>Union Meeting Corporate Center<br>925 Harvest Drive<br>Blue Bell, PA 19422<br>(215) 977-1000<br><br>Counsel for Defendant, Aetna Inc. |
| DATED: September 23, 2002 |  |

## CERTIFICATE OF SERVICE

The undersigned certifies that on this day a copy of the foregoing is being served upon the persons and in the manner indicated below:

### U.S. Postal Service, First Class Mail

Ronald K. Meyer, Esquire
303 W. Lancaster Avenue, #101
Wayne, PA 19087
(610) 889-9339
(Counsel for Plaintiffs)


William J. Brennan, Esquire
Butera, Beausang Cohen Brennan
630 Freedom Business Center
Suite 212
King of Prussia, PA 19406
(610) 265-0800
(Co-counsel for Plaintiffs)

/s/Frederick P. Santarelli
FREDERICK P. SANTARELLI

DATED: September 23, 2002

EXHIBIT "1"



# State of New Jersey
### DEPARTMENT OF BANKING AND INSURANCE
### OFFICE OF SOLVENCY REGULATION
PO BOX 325
TRENTON, NJ 08625-0325

Tel (609) 292-5350
Fax (609) 292-6765

**JAMES E. MCGREEVEY**
*Governor*

**HOLLY C. BAKKE**
*Commissioner*

CERTIFICATE OF COMPLIANCE
September 18, 2002

I, Holly C. Bakke, Commissioner of Banking and Insurance of the State of New Jersey, do hereby certify, depose and say that:

1. The Prudential Insurance Company of America, Newark, New Jersey, is a stock life insurer organized under the laws of the State of New Jersey on April 3, 1873, and commenced business in said State on October 13, 1875. Said Company was originally formed as a stock life insurer, converted to a mutual life insurer in 1943, and converted to a stock life insurer in 2001;

2. The home office of said Company is located at 751 Broad Street, Newark, New Jersey 07102, and the name of the agent therein and in charge thereof upon whom service of process may be served against said Company is Susan L. Blount, Secretary;

3. Said Company is presently authorized to transact in New Jersey the business of life insurance; health insurance; and writing annuity contracts, being the kinds of insurance specified in N.J.S.A. 17B:17-3; N.J.S.A. 17B:17-4, and N.J.S.A. 17B:17-5, a certified copy of the relevant sections of the statute is attached for your information, and also such other insurance and reinsurance as may be permitted under the laws of the State of New Jersey to be written by an insurer authorized to do the kinds of business above mentioned. Said Company is also authorized to write in New Jersey "Variable Contracts" being the kinds of insurance specified in N.J.S.A. 17B:28-1 et seq.;

4. Said Company is in good standing and having complied with all the requirements of the New Jersey conversion statutes N.J.S.A. 17:17C-1 et seq. is authorized to transact the business of insurance in the State of New Jersey in accordance with all the provisions of its charter and the laws of this State as provided in its Certificate of Authority reissued by this Department on December 5, 2001;

5. The effective date of the plan of reorganization pursuant to which the Company converted from a mutual life insurer to a stock life insurer is December 18, 2001. As reported by the Company, subsequent to the conversion, the Company will have a total capital and surplus of $4,502,280,512.

I further certify that The Prudential Insurance Company of America is not precluded by its charter or the laws of this State from engaging in the classes of business stated above in states other than New Jersey, upon compliance with the laws of such other states.

IN WITNESS WHEREOF, I have here unto set my hand and affixed my Official Seal, at Trenton, the day and year first above written.

*Holly C. Bakke*
Commissioner of Banking and Insurance