IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNIVERSAL HEALTH SERVICES, INC.<br>and UNIVERSAL HEALTH SERVICES, INC.<br>FLEXIBLE BENEFIT PLAN, UHS DENTAL<br>COMPONENT,<br>          Plaintiffs | : | |
| | : | |
| | : | Civil Action No. 02-2715 |
|       vs. | : | |
| | : | |
| AETNA, INC. and<br>PRUDENTIAL INSURANCE COMPANY<br>OF AMERICA, | : | |
|           Defendants. | : | |

## ORDER

AND NOW, this _____ day of _____, 2002, upon consideration of Defendant Aetna Inc.'s ("Aetna") Motion to Dismiss, or In The Alternative, To Quash Purported Process And Service Of Process, and any response thereto, it is hereby ORDERED that the complaint is dismissed.

BY THE COURT:

_____
CLIFFORD SCOTT GREEN
United States District Judge

fps: 54074.1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNIVERSAL HEALTH SERVICES, INC. and UNIVERSAL HEALTH SERVICES, INC. FLEXIBLE BENEFIT PLAN, UHS DENTAL COMPONENT, : : : : : **Plaintiffs** : : **vs.** : : AETNA, INC. and PRUDENTIAL INSURANCE COMPANY OF AMERICA, : : : : : **Defendants.** : : | **Civil Action No. 02-2715** |

## ORDER

AND NOW, this _____ day of _____, 2002, upon consideration of Defendant Aetna Inc.'s ("Aetna") Motion to Dismiss, or In The Alternative, To Quash Purported Service Of Process, and any response thereto, it is hereby ORDERED that the alleged process and the purported service of such process on Aetna are quashed.

BY THE COURT:

_____
CLIFFORD SCOTT GREEN
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNIVERSAL HEALTH SERVICES, INC.** : <br> **and UNIVERSAL HEALTH SERVICES, INC.** : <br> **FLEXIBLE BENEFIT PLAN, UHS DENTAL** : <br> **COMPONENT,** : <br> **Plaintiffs** : <br> : <br> :    **Civil Action No.  02-2715** <br> **vs.** : <br> : <br> **AETNA, INC. and** : <br> **PRUDENTIAL INSURANCE COMPANY** : <br> **OF AMERICA,** : <br> : <br> **Defendants.** : <br> : | |

## DEFENDANT AETNA INC.'S ("AETNA") MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO QUASH PURPORTED PROCESS AND SERVICE OF PROCESS

Defendant, Aetna Inc. ("Aetna"), moves to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2), (b)(4), (b)(5) and (b)(6) (lack of jurisdiction over the person, insufficiency of process, insufficiency of service of process, and failure to state a claim, respectively), as well as Rule 4(m).[1]

The many reasons for dismissing Plaintiffs' Complaint are further set forth in the accompanying Memorandum of Law.  In sum, not only have Plaintiffs failed to obtain proper process, or properly and timely serve it on Aetna (and thus there is no jurisdiction over Aetna), but the attempted claims are otherwise barred on their face based on Plaintiffs' own judicial

---

[1] Plaintiffs conceded in a recent 9/9/02 motion for extension of time to serve process, that Plaintiffs had not effected any service upon Aetna within the time allotted by Rule 4(m), which expired September 4, 2002.  Plaintiffs delayed filing their motion for extension of the expired 120-day period until *after* it had already expired.  Then, before the response due date under the rules for motions, and after Plaintiffs' counsel apparently *faxed* to the Court a letter on the subject (a copy of which was not faxed, but rather was *mailed* to the undersigned counsel), the Court entered an Order on September 20, 2002 (signed September 19) extending the 120-day period.  Because Aetna did not respond prior to entry of such Order, Aetna is also separately moving today for reconsideration of that September 20, 2002 Order, requesting that the Order be vacated and Plaintiffs' motion for extension denied.

admissions, controlling principles of *res judicata*, the applicable statute of limitations, and other grounds recited in the Memorandum of Law. Aetna moves to dismiss also under Rule 4(m), because there was no proper, timely service of process within the 120-day deadline, as required under the Rules. In the alternative, Aetna moves to quash the alleged process and the purported service of the alleged summons.

Respectfully submitted,

OF COUNSEL:
ELLIOTT REIHNER SIEDZIKOWSKI
  & EGAN, P.C.

      /s/Frederick P. Santarelli
JOHN M. ELLIOTT
FREDERICK P. SANTARELLI
Union Meeting Corporate Center
925 Harvest Drive
Blue Bell, PA 19422
(215) 977-1000

Counsel for Defendant, Aetna Inc.

DATED: September 23, 2002

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNIVERSAL HEALTH SERVICES, INC.<br>and UNIVERSAL HEALTH SERVICES, INC.<br>FLEXIBLE BENEFIT PLAN, UHS DENTAL<br>COMPONENT, | : <br> : <br> : <br> : | |
| Plaintiffs | : | Civil Action No. 02-2715 |
| vs. | : | |
| AETNA, INC. and<br>PRUDENTIAL INSURANCE COMPANY<br>OF AMERICA, | : <br> : <br> : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT AETNA INC.'S ("AETNA") MOTION TO DISMISS, OR IN THE**
**ALTERNATIVE, TO QUASH PURPORTED PROCESS AND SERVICE OF PROCESS**

Defendant, Aetna Inc. ("Aetna"), hereby submits this Memorandum of Law in support of its Motion to Dismiss, Or In The Alternative, To Quash Purported Process And Service of Process. The plaintiffs are Universal Health Services, Inc. ("Universal") and Universal Health Services, Inc. Flexible Benefit Plan, UHS Dental Component's (collectively, "Plaintiffs").

**I.    INTRODUCTION**

The procedural history of this matter compels putting an end to it once and for all. Universal is a multi-billion dollar corporation with substantial legal resources, and no legitimate excuses for the failures, delays and lack of diligence in prosecuting this matter. Defendants should not be forced to endure mounting costs from Universal's delays and otherwise meritless litigation over the attempted claims, which are barred in any event on their face.

This is the second action and third complaint filed by Universal based on the same alleged facts. Universal initiated the first action in *state* court, despite pleading claims that were clearly completely preempted by ERISA (and that were otherwise meritless). The first action was removed to the Eastern District. Aetna moved to dismiss that Complaint. Universal did not

oppose dismissal, and this Court therefore entered an Order dismissing the action. *See* Exhibit "1" (Order dated March 28, 2002 in 02-cv-0914). Under the express terms of Rule 41, that dismissal constituted a final adjudication on the merits.[2]

Plaintiff did not appeal the Order in that case. Nor could it genuinely do so in good faith, having not opposed dismissal and having not preserved any objection thereto. However, after the case was dismissed and marked "closed" by the Clerk, Universal filed what it termed a "revised" Complaint *in that closed docket*. This Court properly struck that "revised" or purported amended complaint. *See* Exhibit "2" (Order dated May 20, 2002 in 02-cv-0914).

Universal filed yet another complaint ***as a separate action***, which is the action now before this Court. In doing so, Universal not only ignored the *res judicata* effect of the prior dismissal, but it also failed to disclose that this was a related case *vis a vis* the earlier one that this Court dismissed. The Clerk has since transferred the matter from Judge Dalzell to Judge Green, as Judge Green presided over and dismissed the first action.

After filing the separate action, Plaintiffs did nothing to advance it in this Court, despite the 120-day deadline under the federal rules to make proper service. *See* Fed.R.Civ.P. 4(m). As for "service" on defendant PICA, Plaintiffs only very recently made an apparent effort to do so, through new counsel who recently entered an appearance. Plaintiffs do not even offer any excuse for the failure to make service by the other counsel, who has not withdrawn his appearance. Nor do Plaintiffs offer any legitimate excuse for the failure of Universal's *new counsel* to effectuate proper service on PICA. *See* 9/16/02 Motion to Dismiss filed on behalf of PICA.

---

[2]    Rule 41(b) ("Involuntary Dismissal: Effect Thereof") provides "[u]nless the court in its order for dismissal otherwise specifies, a dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under rule 19, ***operates as an adjudication upon the merits***." (Emphasis added).

In any event, such purported eleventh-hour "service" on PICA by new counsel is patently

deficient.    *See* PICA's 9/16/02 Motion to Dismiss.    Among other things, the purported

"summons" was not really a summons of this Court at all.    Rather, it appears to be nothing more

than a form on which Universal itself typed the Clerk's name -- making it appear as if it was

actually issued by the Clerk, when in fact the docket and record shows no such summons has

ever been issued by the Clerk.    As such, and as the Third Circuit has expressly and unequivocally

cautioned District Courts and federal litigants, it is a nullity and a fatal defect requiring

dismissal. *See Ayres v. Jacobs & Crumplar, P.A.,* 99 F.3d. 565, 569 (3d Cir. 1996).[3]

---

[3]    Furthermore, Plaintiffs' new counsel's purported service of this "summons" is otherwise patently deficient, as any cursory inquiry of publicly available information would have readily shown. Universal's new counsel mailed the purported "summons" not to PICA's duly registered address for service of process, but to some office location in Roseland, New Jersey. Nor was it addressed or received by any officer of PICA or other authorized agent for service of process, whose name and address is also readily identifiable from a cursory inquiry into publicly available information. *See* Exhibit "3" (copy of the original "Certificate of Compliance" issued on 9/18/02, upon request of undersigned counsel, by the State of New Jersey, Department of Banking and Insurance, and certifying, at Para. 2 thereof, the publicly available information identifying the "home office of [PICA] . . . and the name of the agent therein and in charge thereof upon whom service of process may be served against [PICA]."). *See Hemmerich Industries, Inc. v. Moss Brown & Co., Inc.,* 114 F.R.D. 31, 32 (E.D.Pa. 1987)(attempted service on out of state corporation under Pennsylvania Rule 403 requires plaintiff to establish that "the individual served was an executive officer, manager, person in charge of the place of business, or an agent authorized in writing to receive service of process for the corporation. The fact that there may have been actual notice does not affect the result."). Here, Universal's new counsel did not even address the mail to any individual, let alone one of the foregoing persons enumerated as being necessary for service on corporations by mail under the Pennsylvania Rules.

    Such fundamental failures to comply with Rule 4 have routinely resulted in dismissals, even for *pro se* litigants; a multi-billion dollar sophisticated corporate litigant like Universal should be likewise held to the rules. *See, e.g., Petrucelli v. Bohringer and Ratzinger,* 46 F.3d 1298, 1306-07 (3rd Cir. 1995) (confirming that "half-hearted efforts" by counsel to effect service of process prior to the 120-day deadline does not excuse the delay; also stating: "Even when delay results from inadvertence of counsel, it need not be excused . . . the federal plaintiff's lawyer is not to take any chances. Treat the 120 days with the respect reserved for a time bomb."); *Ayres v. Jacobs & Crumplar, P.A.,* 99 F.3d 565 (3rd Cir. 1996) (*pro se* plaintiff's complaint dismissed for failure to follow what plaintiff attempted to downplay as mere "technical niceties" of Rule 4); *McGann v. State of New York,* 77 F.3d 672 (2d Cir. 1996) (*pro se* prisoner's complaint dismissed for failure to timely effect service, where the *pro se* litigant neglected to include a proper "acknowledgment of service" form with the complaint as required by Rule 4).

    Apparently recognizing these failures, and trying to cast blame elsewhere, new counsel for Universal has, regrettably, denigrated to leveling personal, *ad hominen* attacks on the undersigned defendants' counsel, in a recently filed 9/20/02 "Second Motion" for extension as to service on PICA. As appropriate, Defendants will respond separately to said "Second Motion", which contains many inaccurate assertions, within the time allotted under the applicable rules.

As for Universal's failure to serve Aetna, Universal conceded it failed to do so in a September 9, 2002 motion requesting this Court to extend the 120-day deadline to effect service on Aetna. *Conspicuously absent from said motion for extension to serve Aetna, however, is any allegation to support it, other than to say Universal's original counsel, Mr. Ronald Meyer, did not take "appropriate" action.* There is certainly no statement from Mr. Meyer for this Court (or Defendants) to evaluate to determine if there is any excuse, let alone a legitimate one or any "good cause," to justify any such extension. Nor does Universal's 9/9/02 motion offer any explanation of why Universal's new counsel, who has been involved since mid-August and possibly earlier, failed to simply request a valid summons when he entered his appearance with the Clerk on August 22, 2002, and then take it to Aetna's local Montgomery County office (which is merely minutes from counsel's office), prior to expiration of the 120-day deadline. Indeed, Universal's counsel did not even file the motion for extension until *after* the 120-day deadline, which expired September 4, 2002.[4]

Other than saying Mr. Meyer did not act appropriately, Universal's motion avers no explanation whatsoever for this Court to even consider a request for extension. Indeed, Universal's 9/9/02 motion for extension of the 120-day deadline under Rule 4(m) does not even plead, let alone prove, any basis for showing the "good cause" that would satisfy Rule 4(m) for such extensions. *See Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1306-07 (3d. Cir. 1995) (affirmed finding of no "good cause" due to "several inexcusable errors" by plaintiff's counsel, who failed to act with "reasonable care and diligence," and confirming it is not

---

[4]Regrettably, rather than acknowledging his errors, Plaintiffs' new counsel has reacted by leveling unprofessional personal attacks on the undersigned counsel—actually going so far as making untrue *ad hominen* attacks on counsel's integrity—in order divert blame from his own neglect. *See* Plaintiffs' 9/20/02 "Second Motion" for Extension, Para. 14, *and* Memorandum of Law in support thereof, p. 2, which the undersigned received today. Plaintiffs' new counsel is also quick to blame others, including Universal's original counsel, Mr. Meyer. Such attempts to divert blame should not, however, divert this Court's attention from the facts and real issues, *i.e.* what is Universal's *original* counsel's excuse for not complying with Rule 4(m), and, what is Universal's *new* counsel's excuse for neglecting to do so?

4

sufficient where there are "half-hearted efforts by counsel to effect service") and "[e]ven when delay results from inadvertence of counsel, it need not be excused.").

On or about September 12, 2002, the undersigned counsel telephoned Universal's counsel and expressly advised he was being retained to represent PICA in the matter. The undersigned counsel also gave Universal's new counsel the courtesy of advising him directly and personally that, under the federal rules, the "summons" sent to PICA appeared defective because it did not appear to have been issued by the Court or Clerk. Universal's new counsel responded, in words or substance, that his office prepared the summons, and that is how they always do it. The undersigned counsel advised Universal's new counsel that an attorney is not allowed to simply issue his or her own summons under the federal rules, but rather, it must be issued by the Court Clerk. Universal's new counsel disagreed with this point, at which time the undersigned counsel pointed Universal's counsel to the specific rules and language therein. The undersigned also advised Universal's new counsel that the caselaw viewed these requirements as important ones that should not be taken lightly, and that PICA would be raising the objection.[5]

---

[5] In view of the undersigned's responsiveness and collegiality to Universal's new counsel, it is troubling that Universal's counsel would now so readily attack and try to blame the undersigned counsel in Universal's recent 9/20/02 "Second Motion" for Universal's counsel's failures. From the very first contact from Universal's new counsel, the undersigned has been responsive, providing Universal's new counsel the information he requested. When asked, the undersigned immediately faxed Universal's new counsel a copy of the complaint, as he requested; and personally advised him in a phone call, prior to filing anything on behalf of PICA, that the undersigned would be entering an appearance for PICA and that PICA would object to the summons and service. The undersigned went further and pointed him to the specific rules prohibiting him from issuing his own summons in federal court. It is absurd for Universal's new counsel to blame the undersigned counsel, in the recent 9/20/02 "Second Motion", for Universal's and his failure to follow the rules. When asked whether the undersigned counsel would accept service for Aetna, he was expressly told that client approval was obviously necessary for such action—and made clear that there could be no assurance for any acceptance, particularly since Aetna viewed the case as baseless and Universal had previously represented it would produce an alleged audit supposedly supporting the claim, but Universal had reneged on that promise. Even when Universal's new counsel made the request of the undersigned counsel in late August to accept service, at no time did he disclose he was concerned with any 120-day deadline or had any other deadline he needed to meet. Moreover, the written request for acceptance of service did not even comply with Rule 4's express requirements for this type of service.

PICA's response due date ostensibly fell on the following Monday, September 16, 2002. In accordance with the rules, PICA filed its Motion to Dismiss on that date, raising many other grounds for dismissing the action. *See* PICA's 9/16/02 Motion to Dismiss.

Like the attempted claims against PICA, Universal's attempted claims against Aetna must fail. Aside from violating Rule 4(m), there is no valid process and no valid service of any process (and, thus no jurisdiction). Additionally, the claims are barred on their face by *res judicata*. Also, Plaintiffs' attempted claims are time-barred on their face under applicable statutes of limitations, and are otherwise meritless. The Complaint should be dismissed.

## II.    ARGUMENT

### A. Dismissal Is Warranted Because Plaintiffs' Violated Rule 4(m) By Failing To Serve Valid Process Properly and Timely Within 120 Days Of Filing The Action.

As set forth in the motion for reconsideration of the Court's September 20, 2002 Order, which is also being filed today and incorporated herein by reference, the Court should vacate that Order because Aetna was not allotted the opportunity it would have had under the federal rules for responding to motions. Indeed, as set forth therein, and largely repeated here, there is no "good cause" or other valid reason for this Court to extend the 120-day deadline for Universal. Therefore, under Rule 4(m), the complaint should be dismissed.

To the extent Rule 4(m) provides for extensions of this 120-day deadline, a proper analysis pursuant to the procedure outlined by the Third Circuit should compel this Court to deny the extension. Rule 4(m) provides:

> **Time Limit for Service.** If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for

the failure, the court shall extend the time for service for an appropriate period.

In *Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1305 (3rd Cir. 1995), the Third Circuit held that only if "good cause" exists is the District Court required to extend the 120-day deadline for service. *Id.* at 1305. Absent a finding of "good cause", the Court has discretion in deciding whether to dismiss the action or extend time for service. *Id.* The Third Circuit gave the following specific directions to District Courts, when presented with such motions for extension of the 120-day deadline:

> When entertaining a motion to extend time for service, the district court ***must*** proceed in the following manner. First, the district court should determine whether good cause exists for an extension of time. If good cause is present, the district court must extend time for service and the inquiry is ended. If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service.

*Petrucelli*, 46 F.3d at 1305 (emphasis added).

The Third Circuit also cautioned that, even if a statute of limitations would bar refiling the action, this does not prevent the Court from dismissing the case for violating the 120-day deadline:

> We emphasize that the running of the statute of limitations does not require the district court to extend time for service of process. Rather, absent a finding of good cause, a district court may in its discretion still dismiss the case, even after considering that the statute of limitations has run and the refiling of an action is barred.

*Petrucelli*, 46 F.3d at 1306.

The efforts made by the plaintiff in *Petrucelli* were substantial efforts in comparison to Universal's patent disregard of the Rules in this case. In *Petrucelli*, the plaintiff employed a professional process serving company, and served the summons and complaint on the Secretary

7

of State of Oklahoma, who issued a certificate of proof of service to the plaintiff. The plaintiff's

counsel was also verbally assured by the office of Secretary of State that service had been made.

Nonetheless, the Third Circuit noted that "Petrucelli, however, made several inexcusable

errors." *Id.* at 1306. Among other things, in concluding that plaintiff failed to establish "good

cause" for an extension, the Third Circuit stated: "A prudent attorney exercising reasonable care

and diligence would have inquired into the matter further when it was obvious that the

acknowledgment form was not forthcoming." *Id.* at 1307. The Third Circuit explained:

> We have previously held that reliance upon a third party or on a
> process server is an insufficient basis to constitute good cause for
> failure to timely serve, and is also an insufficient basis for granting
> an extension of time to effect service. [citations omitted]. We have
> also held that " '*half-hearted' efforts by counsel to effect service
> of process prior to the deadline do not necessarily excuse a delay,
> even when dismissal results in the plaintiff's case being time-
> barred due to the fact that the statute of limitations on the
> plaintiff's cause of action has run." [citation omitted].*

*Petrucelli*, 46 F.3d at 1307 (emphasis added).

The Third Circuit explained further that "[e]ven when delay results from inadvertence of

counsel, it need not be excused." *Petrucelli*, 46 F.3d at 1307. The Court cautioned: "Further, we

have previously cautioned that, the lesson to the federal plaintiff's lawyer is *not to take any*

*chances. Treat the 120 days with the respect reserved for a time bomb*." *Id.* (emphasis added).

Other Courts confirm that compliance with Rule 4 is not some "technicality" that

Plaintiffs can so casually disregard. "A showing of good cause [under Rule 4(m)] requires at

least 'excusable neglect' –good faith and some reasonable basis for noncompliance with the

rules. [citations omitted]. When counsel has ample notice of a defect in service, does not attempt

an obvious correction, and chooses to defend the validity of the service attempted, there is no

good cause for the resulting delay if that method of service fails." *Adams v. AlliedSignal*

8

*General Aviation Avionics*, 74 F.3d 882, 887 (8th Cir. 1996) (finding that where public information and review of the rules would have revealed how to effect proper service, "plaintiffs' insufficiency of service was willful, not inadvertent").

Tellingly, Plaintiffs' recent 9/20/02 "Second Motion" for an extension resorts to unprofessional name calling against the undersigned counsel, in an effort to divert blame for Universal's and its original and new counsel's failures. Indeed, even after new counsel requested the undersigned counsel to accept service, he failed to forwarded the proper "acknowledgment of service" form and notices spelled out in Rule 4.

As the caselaw has made clear time and again, these rules are not merely "technical niceties", and even *pro se* litigants are held to them. *See, e.g., Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565 (3rd Cir. 1996) (*pro se* plaintiff's complaint dismissed for failure to follow what plaintiff attempted to downplay as mere "technical niceties" of Rule 4); *McGann v. State of New York*, 77 F.3d 672 (2d Cir. 1996) (*pro se* prisoner's complaint dismissed for failure to timely effect service, where the *pro se* litigant neglected to include a proper "acknowledgment of service" form with the complaint as required by Rule 4). Universal should not be treated differently than other sophisticated litigants in this Court.

Universal has chosen its strategy of trying to justify its own failures and to blame others for them. But, as the Court in *Adams* stated: "At some point, a litigant must bear the consequences of conscious strategic or tactical decisions of this kind." *Adams*, 74 F.3d at 887. Here, the proper consequences are dismissal of this action under Rule 4(m), or pursuant to the other grounds that are set forth in this motion, as well as in the motion for dismissal that was filed by PICA on September 16, 2002.

In furtherance of its unsupported 9/9/02 motion for extension, Universal's new counsel also forwarded a letter to chambers advising that Universal's original chosen counsel, Ronald K. Meyer, supposedly "disappear[ed]", and that Universal's "last contact with Mr. Meyer was during mid-May, 2002 and we have been unable to locate him or his file." However, the letter to chambers offers no explanation of what, if any, efforts Universal has made to locate the supposedly "disappeared" Mr. Meyer. While alleging it has had no contact with Meyer since "mid-May", Plaintiffs' 9/9/02 motion offers no explanation as to whether it even *attempted* to communicate with Mr. Meyer for so many months, or whether it did anything diligence would require in monitoring and overseeing this action. Indeed, in Plaintiffs' 9/20/02 "Second Motion" for extension, which was received today, Plaintiffs still dodge this issue.

The suggestion that there are "unusual facts surrounding Mr. Meyer's disappearance" is, itself, unusual. After reading this letter, the undersigned defendants' counsel simply dialed Mr. Meyer's phone number as indicated on the complaint, and actually spoke to Mr. Meyer's son, who stated that although Mr. Meyer was out at the moment, he expected him to return that evening. If, as Universal alleges, it is "unable to locate" Mr. Meyer, then it is highly questionable whether Plaintiffs or their new counsel have made any reasonable efforts to do so.

At a minimum, Plaintiffs should plead what efforts they or their new counsel supposedly made, so that this Court and defendants (and any appellate body) may have an opportunity to evaluate them for the "good cause" determination, *before* thrusting the defendants and the Court into more costly litigation over this meritless case. Here, inasmuch as Plaintiffs do not even plead any such efforts for the court's consideration, there is no basis upon which this court may exercise any discretion to do anything but dismiss the case for failure to comply with Rule 4(m).

### B. There Is No Valid And Sufficient Process, Or Service Of Process, On Aetna And Consequently There Is No Personal Jurisdiction.

After expiration of the 120-day deadline, on or about September 16, 2002, Universal's new counsel apparently filed a praecipe for the Clerk to issue an alias summons. Universal's counsel did so based on the complaint filed May 7, 2002. However, inasmuch as the 120-day deadline had already expired on September 4, 2002, it was inappropriate to request the summons or to cause the Clerk to issue one, absent permission of the Court under Rule 4(m). Because Universal had no authority to obtain a summons after the 120-day deadline, that summons should be deemed a nullity, as it was improperly requested and mistakenly issued by the Clerk.

Further, by the time Universal's new counsel requested this alias summons on September 16, 2002, he obviously knew that a lawyer who has not been authorized to practice law in Pennsylvania or this Court (Ronald K. Meyer) filed the complaint on which he was requesting issuance of the summons. Nonetheless, Universal went ahead, and without refiling a complaint signed by any licensed attorney, and without disclosing same to the Clerk or the Court, presented a praecipe on September 16, 2002 requesting the Clerk to issue another summons knowingly *based on an unauthorized complaint*. For this reason, in addition to the above-referenced reasons, the summons that was issued that day should be deemed invalid and a nullity.

Universal cannot have it both ways—claiming that the lawyer who filed the complaint was not authorized to practice law, and use that as a disingenuous excuse for not serving the complaint; while, at the same time, pretending that Mr. Meyer's actions were "authorized" and should be considered valid for purposes of obtaining a summons, without any need for a licensed attorney to file a complaint for these corporate parties. It is respectfully submitted that an attorney performing the proper due diligence required by Rule 11 before signing and filing the

complaint in this action, or before requesting a summons based on such a complaint, would not do so because the complaint is clearly barred on its face. *See* Arguments below. ***To this day, no licensed attorney with authority has signed the complaint that is causing the Court and the defendants to expend litigation resources over this baseless action.***

Accordingly, the September 16, 2002 "process" itself is invalid, and thus, so is the service thereof. In *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565(3rd Cir. 1996), the Third Circuit held that "the failure of a plaintiff to obtain valid process from the court to provide it with personal jurisdiction over the defendant in a civil case is fatal to the plaintiff's case. The parties cannot waive a void summons." *Id.* at 569. The Third Circuit reiterated the District Court's observation that "the plaintiff had provided no excuse for her failure to comply with the Rule relating to service 'other than the fact that she simply did not think the 'technical niceties' of service of process important." *Id.* In affirming the District Court's dismissal of the case, the Third Circuit rejected the plaintiff's attempt to downplay the rules as mere "technical niceties," and reiterated their vital importance.

The Third Circuit further underscored the need compliance with Rule 4 when it held:

> We further hold that a summons when properly issued is not effective in conferring personal jurisdiction upon a partnership or individual if it is not served in accordance with Rule 4 of the Federal Rules of Civil Procedure unless service has been effectively waived. In this instance, there was no such waiver.

*Ayres*, 99 F.3d at 570.

In *Barrett v. City of Allentown*, 152 F.R.D. 46, 49 (E.D.Pa. 1993), the Eastern District Court dismissed the complaint and quashed service thereof because the summons was invalid (in that case, the plaintiff served an unsigned summons). The Court explained that "attempts at service of the original complaint violated the provisions of Fed.R.Civ.P. 4(b), which requires that a summons be

12

signed and sealed by the Clerk of the Court." *Barrett*, 152 F.R.D. at 49. Just as the summons in *Barrett* was invalid ("*a flagrant disregard* for the rules of procedure"), the summons obtained by Universal after expiration of the 120-days should similarly be deemed invalid and not eligible for effecting proper service on Aetna. *Barrett*, 152 F.R.D. at 49 (emphasis added).

This was underscored further in *Macaluso v. NY St. Dept. of Environ. Conserv.*, 115 F.R.D. 16, 18 (E.D.N.Y. 1986), where the Court held, with respect to an invalid summons, "this Court, however, does not view service of an unsigned, unsealed summons not issued by the court clerk as a mere technical defect. Instead, it amounts to a complete disregard of the requirements of process set forth clearly and concisely in Rule 4." The Court in *Macaluso* further explained:

> There is no reason, however, to countenance repeated failures to observe the clear and concise dictates of a federal Rule. Plaintiffs have set forth no reason to explain, and this Court sees no justification for, plaintiffs' inability to properly serve sufficient process under Rule 4 of the Federal Rules of Civil Procedure. For this reason, the service of improper process on July 10 and 11 is quashed, and the attempted service-by-mail [of proper process] on August 1 is quashed.

*Macaluso*, 115 F.R.D. at 19.

The summons improperly requested and obtained by Universal after expiration of the 120 days should be deemed invalid, and thus, the attempted service thereof is improper. There are no excuses, and none that are even offered, or that could possibly be offered in good faith. Accordingly, the Complaint should be dismissed for insufficiency of process and insufficiency of service of process. In the alternative, the purported "process" or "summons" (and any alleged service thereof) should be quashed.

### C. **Plaintiffs Claims Are Barred By _Res Judicata_ On Their Face.**

Dismissal of Plaintiffs' Complaint is appropriate also because this Court has already previously dismissed the identical Complaint. Thus, the doctrine of _res judicata_ applies to bar Plaintiffs' Complaint.

A final judgment on the merits precludes the parties or their privies from relitigating issues that were or could have been raised in that action. _Federated Department Stores v. Moitie_, 452 U.S. 394, 398 (1981). A determination in a previous action will preclude a plaintiff's claims in a second action where the determination meets the following criteria:

1. there must have been a final judgment on the merits;

2. the prior action must have involved the same parties or their privies;

2. the prior action must have involved the same claim; and

4. the judgment in the prior action must have been rendered by a court of competent jurisdiction.

_Lubrizol Corp. v. Exxon Corp._, 929 F.2d 960, 963 (3d Cir. 1991); _Citibank, N.A. v. Data Lease Financial Corp._, 904 F.2d 1498, 1501 (11th Cir. 1990); _In re Teltronics Services, Inc._, 762 F.2d 185, 190 (2d Cir. 1985); _Moore's Federal Practice 3d_, § 131.01.

Here, Universal filed a complaint alleging virtually identical facts. _See_ Exhibit "3" of PICA's 9/16/02 Motion to Dismiss (initial Complaint in 00-cv-0914). That action was dismissed by Order dated March 28, 2002. _See_ Exhibit "1" (March 28, 2002 Order in 00-cv-0914). This Court was certainly a court of competent jurisdiction. Finally, the Court's dismissal operates as an adjudication on the merits. Under Rule 41(b), the dismissal constitutes an adjudication on the merits:

> Unless the court in its order for dismissal otherwise specifies a dismissal under this subdivision and any dismissal not provided for in this rule other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, ***operates as an adjudication on the merits***.

Fed. R. Civ. P. 41(b) (emphasis added)  *See also Dougherty v. NYNEX Corporation*, 835 F. Supp. 22, 23 (D. Maine 1993) (where dismissal resulted from plaintiff's failure to respond to a motion to dismiss pursuant to Rule 12(b)(6), first dismissal acted as an adjudication on the merits and barred second complaint).

Accordingly, on their face, Plaintiffs' claims in this action are barred by the dismissal in the first action, which this Court can simply judicially notice from the Court's own records.

### D. Plaintiffs' Attempted Claims Are Time-Barred.

As a further basis for dismissal, Plaintiffs' attempted claims fail as a matter of law -- again, on their face --because they are time-barred under applicable statute of limitations.

There is no dispute that Plaintiffs' claims, if any, are brought under and governed by ERISA. ERISA bars actions for breach of fiduciary duty "after the earlier of (1) six years after . . . the date of the last action which constituted a part of the breach or violation, . . . or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation . . .." 29 U.S.C. §1113. Plaintiff filed this action on May 7, 2002. Thus, if Plaintiffs had actual knowledge of an alleged breach prior to May 7, 1999 - - as judicially admitted by Plaintiffs' Complaint - - then this action is barred by ERISA's three (3) year statute of limitations.

The "actual knowledge" requirement of §1113(2) is defined by the Third Circuit Court of Appeals as follows:

> "actual knowledge of a breach or violation" requires that a plaintiff have actual knowledge of all material facts necessary to understand that some claim exists, which facts could include necessary

15

> opinions of experts, ... knowledge of a transaction's harmful
> consequences,... or even actual harm . . . .

*Gluck v. Unysis Corp.*, 960 F.2d 1168, 1177 (3d Cir. 1992) (citations omitted).  While PICA

acknowledges that the "actual knowledge" requirement is to be stringently construed, *see*

*International Union of Elec., Elec., Salaried, Mach. & Furniture*, 980 F.2d 889, 900 (3d Cir.

1992) ("Gluck therefore requires a showing that plaintiffs actually knew not only of the events

that occurred which constitute the breach or violation but also that those events supported a

claim of breach of fiduciary duty or violation under ERISA."), the Third Circuit's test is clearly

met here.  Importantly, the *Gluck* Court emphasized that "our holding does not mean that the

statute of limitations can never begin to run until a plaintiff first consults with a lawyer." *Id.* at

1177.

    "To determine the last action which constitutes the breach is equivalent to determining

the event marking the first occasion on which it can be said that the breach has occurred."

*Adelman v. Neurology Consultants,* 109 F.Supp.2d 400, 402-03 (E.D. Pa. 2000).  Thus, "[w]hen

a completed breach is alleged to have been repeated at a later time, the chronologically

subsequent alleged breach does not, of course, negate the completed breach[.]" *Id.* at 403.

    It is undisputed that Plaintiffs instituted this action on May 7, 2002.  However, Plaintiffs'

Complaint, as well as the exhibits attached thereto, judicially admit that Plaintiffs actually knew

well in advance all alleged events that purportedly constituted the claimed breach or violation,

and also that those supposed events supported their attempted claims here.   Indeed, Universal

actually sent a letter dated ***April 1, 1999***, confirming it was terminating the relationship due to

the circumstances.  Plaintiffs attached this letter to the complaint. *See* Exhibit "D" to Plaintiffs'

Complaint (which is also attached to PICA's 9/16/02 Motion to Dismiss as Exhibit "3" thereof).

Judicially admitting the untimeliness of Plaintiffs' claims, Plaintiffs' Complaint avers,

*inter alia*:

13.    Effective on or about January 1, 1997, Plaintiff UHS entered into an Administrative Services Agreement (the ASO Agreement) with Prudential with respect to the Plan.

* * *

23.    ***Throughout the term of the ASO Agreement***, Prudential repeatedly and constantly failed to perform in accordance with the terms of the ASO Agreement. Prudential failed or was unable to accept and manage eligibility information provided by UHS; overpaid claims; paid claims to employees who were not eligible under the Plan; and billed UHS for fees for services related to employees who should not have been included in the Plan.

24.    Prudential's failure to perform ***occurred at the outset of the ASO Agreement and continued until the ASO Agreement was terminated.*** UHS, in numerous meetings, written correspondence, e-mails, and telephone calls gave notice to Prudential of Prudential's failure to perform.

25.    In correspondence dated ***November 5, 1997***, Prudential specifically acknowledged and apologized for its systems problems.

* * *

27.    From January of 1997 until the termination of the ASO Agreement by UHS, Prudential paid an undetermined number of claims, but believed to be thousands, to ineligible employees resulting in substantial overpayments of benefits to the financial detriment of Plaintiffs.

28.    UHS made demand of Prudential to recover overpayments or to have Prudential pay such amounts to UHS. Prudential refused and failed to do so.

*See* Plaintiffs' Complaint at ¶¶ 13, 23-25, 27-28 (emphasis added).

In light of Plaintiffs' judicial admissions, and the documentary evidence supporting the

admissions, it is beyond dispute that Plaintiffs' attempted ERISA claims are time-barred. The

Third Circuit's "actual knowledge" requirement is conclusively met, and Plaintiffs' claims fail as a matter of law on their face.[6]

### E. Plaintiffs' Purported Unjust Enrichment Claim is Barred Also Because It Is Preempted by ERISA.

Plaintiffs also purport to plead, as a supposedly separate claim, "unjust enrichment." This is merely a rehash of its "fiduciary duty" claim, and seeks the same relief provided by ERISA. To the extent Plaintiffs are purporting to say otherwise, any such claim cannot survive as a matter of law, and must be dismissed because it is preempted by ERISA. Because such a claim attempts recovery for breach of duties that are governed and regulated by ERISA, it must be asserted only under ERISA, which provides the exclusive law and mechanism for resolution of any such claims. *See Hein v. F.D.I.C.*, 88 F.3d 210 (3d Cir. 1996), *cert. denied*, 519 U.S. 1056 (1997).

The "unjust enrichment" claim seeks to vindicate the same interest as that enforced by ERISA's civil enforcement provisions. As such, this claim would fall directly under Section 502(a)(2), 29 U.S.C. § 1132(a), and/or Section 502(a)(3), 29 U.S.C. § 1132(a)(3). These sections provide for a civil action to be brought:

> (2)    by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title [relating to liability for breach of fiduciary duty];
>
> (3)    by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

29 U.S.C. §§ 1132(a)(2) and 1132(a)(3).[7]

---

[6] This is further reason that the Court should not give Plaintiffs a "second bite of the apple" regarding their utter lack of diligence and compliance with the federal rules regarding process and service. The claims are barred on their face not only by *res judicata*, but also applicable statutes of limitations.

The relief recoverable includes an award of accrued benefits, a declaratory judgment, or appropriate equitable relief. 29 U.S.C. § 1132(a). *See also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 43 (1987). These civil remedies cannot be supplemented or supplanted by attempts to plead state common law claims. As the Supreme Court has explained:

> the detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.

*Id.* at 54 (citing *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985)).

As detailed in Plaintiffs' complaint, the attempted unjust enrichment claim is indisputably rooted in Plaintiffs' assertions – which Aetna disputes and will prove nonavailing – that Defendants breached duties with regard to the services to the ERISA plan. For example, Plaintiffs' "unjust enrichment" count alleges as follows:

> Plaintiff paid to Prudential, during the term of the ASO Agreement, fees substantially in excess of the amount properly due based upon eligibility, as a result of incorrect and improper billing by Prudential.

*See* Complaint at ¶ 52.[8]

This alleged "incorrect and improper billing" is one of the classic duties for which Prudential was named an ERISA fiduciary in the agreement between the parties. *See* Agreement

---

[7] Of course, as the employer/plan sponsor, Plaintiffs are fiduciaries under ERISA. *See Kendal Corp. v. Inter-County Hospitalization Plan, Inc.*, 771 F. Supp. 681, 684 (E.D. Pa. 1991) ("[A]s Plan sponsor and administrator, Kendal is a fiduciary pursuant to ERISA which provides that 'a person is a fiduciary with respect to a plan to the extent . . . he has any discretionary authority or discretionary responsibility in the administration of such plan.'"). Here, there is no question that Universal, the employer sponsor of the health benefits plan, is seeking to recover monies through the Plan. Indeed, the caption further confirms this by expressly identifying the Plan itself.

[8] Aetna strongly disagrees with such allegations. However, Aetna also acknowledges that a court will not entertain factual disputes on a motion to dismiss.

attached to Complaint (naming Prudential an ERISA fiduciary for purposes of review and denial of claims, determining eligibility, determining the amount of benefits for each claim received, and to construe the terms of the Plan).

Indeed, in *Davis v. SmithKline Beecham Clinical Labs., Inc.,* 993 F.Supp. 897 (E.D. Pa. 1998), the court confirmed that an unjust enrichment claim based on alleged overpayments made by an ERISA plan was completely preempted by ERISA. *Id.* at 899. In concluding that the unjust enrichment claim was completely preempted, the court noted that "[t]he determination of the amounts of overpayments . . . will require the examination and interpretation of ERISA plans setting forth the criteria for calculating such payments." *Id.*

The court in *Davis* also noted that the plaintiff sought to vindicate "the same interest that the ERISA civil enforcement provisions allow. He seeks equitable relief for violations of the plan[.]" *Davis*, 993 F. Supp. at 899. *Id.* This holding is directly applicable to Plaintiffs' claims here, and is in accord with holdings from other courts. *See, e.g., Central States, Southeast & Southwest Areas Health & Welfare Fund v. Neurobehavioral Assoc.,* 53 F.3d 172 (7th Cir. 1995) (holding claims for overpayments brought by ERISA representatives against health care providers fall within ERISA's civil enforcement scheme); *Blue Cross & Blue Shield of Alabama v. Weitz,* 913 F.2d 1544, 1549 (11th Cir. 1990) (holding that an ERISA fiduciary's suit to recover money mistakenly paid to an unauthorized health care worker falls within ERISA's civil enforcement scheme).

Because ERISA prescribes the exclusive civil remedy for the conduct alleged herein, ERISA completely preempts the attempted unjust enrichment claim. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58 (1987); *Dukes v. U.S. Healthcare,* 57 F.3d 350 (3d Cir.), *cert. denied,* 516 U.S. 1009 (1995); *District of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. 125,

127 (1992) ("ERISA sets out a comprehensive system for the federal regulation of private employee benefit plans, including both pension plans and welfare plans."). ERISA's "complete preemption" doctrine applies to claims for denial of benefits, as well as to claims for alleged breach of fiduciary duties. *Joyce v. RJR Nabisco Holdings Corp.*, 126 F.3d 166, 178 n.3 (3d Cir. 1997) ("This is consistent with the opinions of other Courts of Appeals, which have found that the complete preemption doctrine also applies to claims of breaches of fiduciary duties under §502(a)(3).").

In addition to being completely preempted, Plaintiffs' unjust enrichment claim is otherwise preempted also under ERISA's general preemption provision set forth in Section 514(a) because it "relates to" an employee benefit plan. *See, e.g., Nealy v. U.S. Healthcare HMO*, 844 F. Supp. 966, 975 (S.D.N.Y. 1994); *McLean v. Carlson Companies, Inc.*, 777 F. Supp. 1480 (D. Minn. 1991). ERISA's broad preemption provision, set forth in § 514(a), states:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in § 1003(a) of this title and not exempt under § 1003(b) of this title . . ..

29 U.S.C. § 1144(a) (emphasis added). The phrase "relates to" in Section 514(a) has been interpreted to mean that "it has a connection with or reference to such a plan." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85 (1983); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987).

Examining the purpose of § 514, the Supreme Court in *Pilot Life* observed that "the express preemption provisions of ERISA are deliberately expansive, and are designed to 'establish pension plan regulations as exclusively a federal concern.'" *Pilot Life*, 481 U.S. at 45-56 (citations omitted). In *Pilot Life*, the plaintiff alleged claims under state law for breach of contract, breach of fiduciary duty, and fraud in the inducement. Because the Court found that

21

each of these claims related to the purported improper processing of a claim under an ERISA plan, the Court held that all of the plaintiff's claims were preempted by ERISA. *Id.* at 47-48. The Court reiterated its expansive interpretation of the "relate to" language in § 514(a), and found that any state law that has a "connection with or reference to" an ERISA plan is preempted. *Id.* at 47.

Notably, other courts have analyzed claims by employers that are virtually identical to the misconduct alleged by Plaintiffs here and have concluded that such claims are preempted by ERISA. In *Tri-State Machine, Inc. v. Nationwide Life Insurance Co.*, 33 F.3d 309 (4th Cir. 1994), the court addressed the identical allegations asserted by Plaintiffs against Aetna, including that Nationwide was "paying claims to the wrong medical providers . . . paying claims not covered, denying claims that were covered . . ." *Id.* at 314.

In holding that the employer's state-law claims were preempted by ERISA, the court emphasized that

> *all of these allegations are essentially complaints about the processing of claims under an employee benefit plan and, therefore, relate to the plan in the common sense meaning of that phrase.* Indeed, the Supreme Court in *Pilot Life* specifically stated: 'The common law causes of action raised in [Plaintiff's] complaint, each based on alleged improper processing of a claim for benefits under an employee benefit plan, undoubtedly meet the criteria for preemption under §514(a)."

*Id.* 314 (emphasis added) (citing *Pilot Life*, 481 U.S. at 48). *See also Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 273 (3d Cir. 2001) (noting that a claim regarding "the proper administration of benefits" by an HMO is preempted by ERISA).

Moreover, in *Insurance Board of Bethlehem Steel Corp. v. Muir*, 819 F.2d 408 (3d Cir. 1987), another case addressing a claim relating to the administration of an ERISA plan by an insurer, the court found that the claims were preempted. The court framed the issue as "whether

22

an insurer who sells certain administrative services to an ERISA plan thereby engages in the business of insurance so as to be the subject to state regulations." *Id.* at 411. If so, the claims may fall within ERISA's "savings clause," and would not be preempted. *Id.*

The "certain administrative services" described by the court were the same as those at issue here - - administrative services that included the processing of claim forms, initial determinations as to coverage and when claims are determined to be valid. *Id.* at 409. Applying U.S. Supreme Court precedent, the court held that the insurer's role in providing "administrative services" was insufficient to prevent ERISA preemption. Id. at 413. *See also O'Reilly v. Ceuleers,* 912 F.2d 1383, 1389 (11th Cir. 1990) ("When an insurance company merely acts as an administrator, its activities are not within the insurance exception savings clause.").

The Third Circuit has stated that a state law claim is preempted by ERISA if: (1) the existence of an ERISA plan is critical to establish liability, and (2) the court's inquiry would be directed to the plan." *1975 Salaried Retirement Plan for Eligible Employees of Crucible, Inc. v. Nobers,* 968 F.2d 401, 406 (3d Cir. 1992). Moreover, the Third Circuit has recently clarified that, while suits against plan administrators are not preempted if they concern "the quality of the medical treatment performed," they are completely preempted if they challenge "the administration of or eligibility for benefits." *Pryzbowski v. U.S. Healthcare, Inc.,* 245 F.3d 266, 272-73 (3d Cir. 2001).

Accordingly, various courts have specifically found that unjust enrichment claims, which relate to an employee benefit plan are preempted. *See Buxton v. Consolidated Rail Corp.,* 1999 U.S. Dist. LEXIS 186, *22 (E.D. Pa. Jan. 6, 1988) ("[ERISA] preemption encompasses actions for fraud, negligence, breach of contract, and unjust enrichment which relate to an employee benefit plan."); *Bunnion v. Consolidated Rail Corp.,* 1998 U.S. Dist. LEXIS 219, *27 (E.D. Pa.

23

Jan. 6, 1998) ("unjust enrichment claims are preempted by ERISA if they relate to an employee benefit plan."); *Wassil v. Advanced Tech. Labs, Inc.*, 1996 U.S. Dist. LEXIS 6107 (E.D. Pa. May 7, 1996) (ERISA preempts breach of contract and unjust enrichment claims).[9]

Application of this controlling precedent to the instant case compels the conclusion that Plaintiffs' attempted "unjust enrichment" claim directly relates to an employee welfare benefit plan and is, therefore, preempted by ERISA's broad preemption provision. *See Pilot Life*, 481 U.S. at 47-48; *Ramirez v. Inter-Continental Hotels*, 890 F.2d 760, 764 (5th Cir. 1989). As such, Plaintiffs' attempted unjust enrichment claim fails as a matter of law on its face.

## III. CONCLUSION

For all of the foregoing reasons, Aetna respectfully requests that this Court dismiss Plaintiffs' Complaint. In the alternative, Aetna requests that, at a minimum, the Court quash the purported "summons" and any alleged service of the invalid "summons".

Respectfully submitted,

OF COUNSEL:
ELLIOTT REIHNER SIEDZIKOWSKI
   & EGAN, P.C.

/s/Frederick P. Santarelli

JOHN M. ELLIOTT
FREDERICK P. SANTARELLI
Union Meeting Corporate Center
925 Harvest Drive
Blue Bell, PA 19422
(215) 977-1000

Counsel for Defendant, Aetna Inc.

DATED: September 23, 2002

---

[9] Even if Plaintiffs' unjust enrichment claim was not preempted, the claim could not survive because it is not needed to "fill in interstices of ERISA." *Jordan v. Federal Express Corp.*, 116 F.3d 1005, 1018 (3d Cir. 1997). In *Jordan*, the Third Circuit held that federal common law shall only be used in ERISA cases when "necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress." *Id.* at 1017-18. Because Plaintiffs' unjust enrichment claim is not needed to effectuate ERISA, it must be dismissed. *Id. See also Bennett v. Conrail Matched Sav. Plan Admin. Comm.*, 1997 U.S. Dist. LEXIS 17295, *26 (E.D. Pa. Oct. 30, 1997).

## CERTIFICATE OF SERVICE

The undersigned certifies that on this day a copy of the foregoing is being served upon the persons and in the manner indicated below:

### U.S. Postal Service, First Class Mail

Ronald K. Meyer, Esquire
303 W. Lancaster Avenue, #101
Wayne, PA 19087
(610) 889-9339
(Counsel for Plaintiffs)


William J. Brennan, Esquire
Butera, Beausang Cohen Brennan
630 Freedom Business Center
Suite 212
King of Prussia, PA 19406
(610) 265-0800
(Co-counsel for Plaintiffs)

_____/s/ Frederick P. Santarelli_____
FREDERICK P. SANTARELLI

DATED:  September 23, 2002

EXHIBIT "1"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNIVERSAL HEALTH SERVICES, INC.,
Plaintiff,

v.

AETNA U.S. HEALTHCARE and
PRUDENTIAL U.S. HEALTHCARE,
Defendants.

CIVIL ACTION

NO. 02-914

FILED

MAR 2 8 2002

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## ORDER

Presently before the Court is Defendants' Motion to Dismiss. Defendants move pursuant

to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Complaint because Plaintiff's

state law claims are preempted by the Employee Retirement Income Security Act of 1974,

29 U.S.C. § 1001 et seq. ("ERISA"). (See Dfdts.' Mem. of Law at 3.) In the alternative,

Defendants move pursuant to Federal Rule of Civil Procedure 12(e) to have Plaintiff file a more

definite statement as to the identity of the party(ies) being sued. (See Dfdts.' Mem. of Law at 8.)

Plaintiff initially filed its Complaint in the Court of Common Pleas of Montgomery County,

and Defendants filed a timely Notice of Removal in this Court. Plaintiff's Complaint contains

four counts against Defendants: Count I alleges Breach of Contract; Count II is for Unjust

Enrichment; Count III is for Misrepresentation; and Count IV sounds in Negligence. All of these

claims are based on state law, and Defendants allege that all claims are preempted by ERISA.

(See Dfdts.' Mem. of Law at 3.) According to the Certificate of Service attached to Defendants'

motion, Defendants served the Plaintiff March 1, 2002. To date, Plaintiff has not filed a response

to the motion. Therefore, pursuant to Local Rule of Civil Procedure 7.1(c), I will grant

Defendants' motion as uncontested.

AND NOW, this _____ day of March, 2002, upon consideration of Defendants'

-2002   09:04      US DISTRICT COURT EDPA

Motion to Dismiss, **IT IS HEREBY ORDERED** that Defendants' motion is **GRANTED**. The

above-captioned action is **DISMISSED** as to both Defendants.

BY THE COURT:

CLIFFORD SCOTT GREEN, S.J.

ENTERED

MAR 2'9 2002

CLERK OF COURT

2

TOTAL P.03

EXHIBIT "2"

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNIVERSAL HEALTH SERVICES, INC.,  :
        Plaintiff,                     :

                         :

        v.                       :

AETNA U.S. HEALTHCARE and        :
PRUDENTIAL U.S. HEALTHCARE,     :
        Defendants.               :

CIVIL ACTION

NO. 02-914

FILED
MAY 20 2002
MICHAEL E. KUNZ, Clerk
By _____ Dep. Cler

## ORDER

Presently before the Court is Defendants' Motion to Strike Plaintiff's Amended
Complaint. Defendants move pursuant to Federal Rule of Civil Procedure 12(f). On March 28,
2002, the Court granted Defendants' motion to dismiss Plaintiff's Complaint as uncontested. On
or about April 3, 2002, Plaintiff filed an Amended Complaint. Defendant asks the Court to strike
Plaintiff's Amended Complaint, arguing that it was filed after the case was closed, and Plaintiff
never asked the Court to reconsider or vacate the order dismissing Plaintiff's Complaint.
According to the Certificate of Service attached to Defendants' motion, Defendants served the
Plaintiff April 24, 2002. In a letter to the Court from Plaintiff's counsel dated May 13, 2002,
Plaintiff stated its intention to enter into a stipulation with the Defendants to withdraw the
Amended Complaint. To date, however, no stipulation has been filed, and Plaintiff has not filed
a response to Defendants' motion. On May 15, 2002, Defendants filed a certification pursuant to
Local Rule 7.1(b), asking that the Court grant the Motion to Strike as uncontested because
Plaintiff had failed to respond. Therefore, pursuant to Local Rule of Civil Procedure 7.1(c), I
will grant Defendants' motion as uncontested.

     **AND NOW**, this ___20___ day of May, 2002, upon consideration of Defendants'
Motion to Strike, **IT IS HEREBY ORDERED** that:

1)  Defendants' motion is **GRANTED**, and Plaintiff's Amended Complaint is

    **STRICKEN**;

2)  The letter from Plaintiff's counsel dated May 13, 2002, is to be **FILED**

    **AND DOCKETED.**


BY THE COURT:


CLIFFORD SCOTT GREEN, S.J.

5-21-02 mailed
Meyer


ENTERED

MAY 2 1 2002

CLERK OF COURT


2

EXHIBIT "3"



# State of New Jersey
### DEPARTMENT OF BANKING AND INSURANCE
### OFFICE OF SOLVENCY REGULATION
PO BOX 325
TRENTON, NJ 08625-0325

JAMES E. MCGREEVEY
*Governor*

Tel  (609) 292-5350
Fax  (609) 292-6765

HOLLY C. BAKKE
*Commissioner*

### CERTIFICATE OF COMPLIANCE
September 18, 2002

I, Holly C. Bakke, Commissioner of Banking and Insurance of the State of New Jersey, do hereby certify, depose and say that:

1.   The Prudential Insurance Company of America, Newark, New Jersey, is a stock life insurer organized under the laws of the State of New Jersey on April 3, 1873, and commenced business in said State on October 13, 1875.  Said Company was originally formed as a stock life insurer, converted to a mutual life insurer in 1943, and converted to a stock life insurer in 2001;

2.   The home office of said Company is located at 751 Broad Street, Newark, New Jersey 07102, and the name of the agent therein and in charge thereof upon whom service of process may be served against said Company is Susan L. Blount, Secretary;

3.   Said Company is presently authorized to transact in New Jersey the business of life insurance; health insurance; and writing annuity contracts, being the kinds of insurance specified in N.J.S.A. 17B:17-3; N.J.S.A. 17B:17-4, and N.J.S.A. 17B:17-5, a certified copy of the relevant sections of the statute is attached for your information, and also such other insurance and reinsurance as may be permitted under the laws of the State of New Jersey to be written by an insurer authorized to do the kinds of business above mentioned.  Said Company is also authorized to write in New Jersey "Variable Contracts" being the kinds of insurance specified in N.J.S.A. 17B:28-1 et seq.;

4.   Said Company is in good standing and having complied with all the requirements of the New Jersey conversion statutes N.J.S.A. 17:17C-1 et seq. is authorized to transact the business of insurance in the State of New Jersey in accordance with all the provisions of its charter and the laws of this State as provided in its Certificate of Authority reissued by this Department on December 5, 2001;

5.   The effective date of the plan of reorganization pursuant to which the Company converted from a mutual life insurer to a stock life insurer is December 18, 2001. As reported by the Company, subsequent to the conversion, the Company will have a total capital and surplus of $4,502,280,512.

I further certify that The Prudential Insurance Company of America is not precluded by its charter or the laws of this State from engaging in the classes of business stated above in states other than New Jersey, upon compliance with the laws of such other states.

IN WITNESS WHEREOF, I have here unto set my hand and affixed my Official Seal, at Trenton, the day and year first above written.

Holly C. Bakke

Commissioner of Banking and Insurance

2