## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNIVERSAL HEALTH SERVICES, INC. and UNIVERSAL HEALTH SERVICES, INC. FLEXIBLE BENEFIT PLAN, UHS DENTAL COMPONENT,<br><br>                **Plaintiffs**<br><br>           **vs.**<br><br>AETNA, INC. and PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>                **Defendants.** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:   **Civil Action No.  02-2715**<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## ORDER

AND NOW, this _____ day of _____, 2002, upon consideration of Plaintiffs'

Second Motion to Extend Time For Service Of Process Upon Defendants, Defendants response

thereto and other matters of record, it is hereby ORDERED that Plaintiffs' motion is DENIED.

It is further ORDERED that the summonses that Plaintiffs' new counsel caused the Clerk to

issue on September 16 and 17, 2002 after expiration of the 120-day deadline prescribed by Rule

4(m), which were issued without Plaintiffs seeking and obtaining this Court's permission to

extend the 120-day deadline, are STRICKEN.

                                   BY THE COURT:


                                   _____
                                   CLIFFORD SCOTT GREEN
                                   United States District Judge

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNIVERSAL HEALTH SERVICES, INC.** | : | |
| **and UNIVERSAL HEALTH SERVICES, INC.** | : | |
| **FLEXIBLE BENEFIT PLAN, UHS DENTAL** | : | |
| **COMPONENT,** | : | |
| **Plaintiffs** | : | |
| **vs.** | : | **Civil Action No. 02-2715** |
| **AETNA, INC. and** | : | |
| **PRUDENTIAL INSURANCE COMPANY** | : | |
| **OF AMERICA,** | : | |
| **Defendants.** | : | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' SECOND MOTION TO EXTEND TIME FOR SERVICE OF PROCESS UPON DEFENDANTS

Defendants, Aetna Inc. ("Aetna") and Prudential Insurance Company of America ("PICA"), submit this opposition to Plaintiffs' "second" motion seeking to extend the admittedly expired 120-day deadline for serving a complaint that never should have been filed in the first place, is meritless on its face and otherwise, and which, to this day, has *not been signed by any attorney licensed to practice law*. Respectfully, the Court should put an end to Plaintiffs' protractions and futile efforts to salvage this action, so Defendants and this Court are not further burdened by it. The Court should deny Plaintiffs' instant motion under Rule 4(m), and dismiss the action pursuant to the express terms of Rule 4(m), as well pursuant to the other reasons set forth in Defendants' pending motions to dismiss filed on September 16 and 23, 2002.

## I.    INTRODUCTION

Plaintiffs are Universal Health Services, Inc. ("Universal") and one of its employee welfare benefit plans (collectively, "Plaintiffs"). Universal is a multi-billion dollar corporation with substantial monetary and legal resources with which to access, prosecute, monitor and direct any litigation it chooses to pursue in this or any other court.

Indeed, a review of the dockets of this and other courts would confirm that Universal has, in the past, been well-represented in numerous litigations throughout the country, many times by some very large law firms experienced in federal litigation and the fundamental federal rules of civil procedure that Universal has continually disregarded in this action.

In addition to the fact that Universal (or its then attorney, Ronald Meyer) should have never filed this action in the first place, Universal has disregarded the federal rules for prosecuting it, including through its new counsel, who is quick to divert blame onto Universal's original counsel -- and even onto the undersigned opposing counsel -- for Universal's and its *new* counsel's continued failures to follow very fundamental Rules. Compounding these failures is the fact that Universal's *new* counsel acknowledged in papers recently filed in this Court, that he and Universal do not have the file. Thus, Universal's new counsel apparently has *not* actually reviewed the file to investigate the underlying merits of Universal's complaint. This is troubling given that Universal and its new counsel have known, at least since mid-August, that the complaint was filed by an attorney *whose license is inactive*, a point which they seek to use in their favor.

Rather than acknowledge the complaint must be dismissed, and that Universal's remedy (if it genuinely believes it ever had a case) would be to proceed against its original counsel, Mr. Meyer, whom Universal now accuses of "defrauding" Universal and the Court in filing the Complaint, Plaintiffs instead choose to continue prosecuting this product of alleged "fraud."[1] In any event, Universal should not be allowed to have it

---

[1] While alleging in conclusory terms it was "defrauded," Universal fails to attach any affidavit or other evidence on the facts of this alleged "fraud," including how Universal came to hire Mr. Meyer in the first place, whether it had a prior relationship with Mr. Meyer, what it did before engaging him to *reasonably* rely upon any alleged misrepresentations, and whether the person who hired Mr. Meyer knew Mr. Meyer or was otherwise complicit with the so-called "fraud." Again, this is another example of Universal not providing this Court with any support to justify exercising discretion to grant the extension.

both ways, posturing as a "victim" by self-servingly exploiting for its *benefit* Mr. Meyer's "inactive" status (which is plainly irrelevant to Mr. Meyer's failure, and Plaintiffs' continued failure, to follow Rule 4), yet continuing to prosecute the action when neither Universal's in-house counsel nor its new counsel have even signed the so-called "fraudulently" filed complaint that is causing so much wasted time and expense for Defendants and this Court.

Just like the *first* motion to extend the time for service on Aetna, which Universal filed September 9, 2002 after Universal had the benefit of *new* counsel for several weeks, this *second* motion was not filed until **after** the 120-day deadline had already expired. Additionally, like the first motion for extension, this second motion fails to plead or proffer by affidavit any facts that would plausibly support some legitimate reason or excuse for this corporate litigant's failure to follow the rules. As explained in the "Argument" section below, the second motion certainly does not come close to satisfying Universal's burden to show "good cause" for an extension pursuant the controlling standards in this Circuit and under Rule 4(m).

This action should be dismissed pursuant to Rule 4(m), as well as pursuant to the other grounds set forth in the presently pending motions to dismiss filed by PICA on September 16, 2002 and by Aetna on September 23, 2002. Apparently acknowledging that dismissal by this Court is inevitable, and rather than sign the complaint filed by Mr. Meyer in this Court, Universal has chosen to attempt to circumvent this Court, by having its new counsel file a new action in *Pennsylvania state court*, under the guise of a so-called "savings action" in anticipation of this Court dismissing this case. *See* Exhibit "1" (September 25, 2002 Praecipe for Summons, Court of Common Pleas of Montgomery

County, Pennsylvania, Civil Action No. 02-19929, as enclosed with September 27, 2002

cover letter from Universal's new counsel to Defendants' counsel). The Court should

dismiss this action, as Plaintiffs anticipate.

## II.  PROCEDURAL & FACTUAL BACKGROUND

Universal commenced this action on May 7, 2002, after this Court had already

dismissed a virtually identical case docketed at 02-cv-914. After filing the complaint,

however, Plaintiffs did absolutely nothing to advance it. In fact, despite the fact that Rule

4(m) provides a generous four (4) month-long period within which to take such basic

action as properly serving the complaint, Plaintiffs neglected to do so.

As set forth in PICA's pending motion to dismiss, Plaintiffs' original counsel, Mr.

Meyer, admittedly never served PICA or Aetna. But even after Plaintiffs retained *new*

counsel, they flagrantly disregarded Rule 4 when he purported to issue his own "home

made" summons with Michael Kunz' name typed thereon.[2]  Universal's new counsel

then purported to make service by mailing this "summons" to some office in New Jersey

that is not even PICA's registered address. Any minimal investigation of public records

would have readily shown this fact, and the precise place and person for service of

process on PICA. Furthermore, this attempted service by Universal's new counsel was

not even addressed or sent to any individual, let alone an executive officer or registered

agent of PICA, which is also in violation of applicable rules.[3]

---

[2] In *Barrett v. City of Allentown*, 152 F.R.D. 46, 49 (E.D.Pa. 1993), the Eastern District Court held there was "*a flagrant disregard*" for the rules of procedure", and dismissed the complaint and quashed service thereof because the summons was invalid (in that case, like Universal's new counsel here, the plaintiff served an unsigned summons). The Court in *Barrett* explained that "attempts at service of the original complaint violated the provisions of Fed.R.Civ.P. 4(b), which requires that a summons be signed and sealed by the Clerk of the Court." *Barrett*, 152 F.R.D. at 49.

[3] A review of the Pennsylvania Rules of Civil Procedure, under which Plaintiffs' new counsel alleges he intended to serve PICA in this manner, would also show that the "process" should not be simply mailed

Even after PICA supplied a certified copy of the state public record specifically identifying PICA's registered individual agent and address for service of process (*see* Exhibit "2"), Plaintiffs' *new* counsel has ignored that as well, still insisting that the Court should give formal recognition to the aforementioned patently defective service. Instead, Plaintiffs' new counsel continues to disregard the Rules and the public record. First, although now admitting that the "home-made" summons was invalid, Plaintiffs' new counsel caused the Clerk to issue a *new* summons to PICA, ***after the 120-day deadline for doing so had already expired***. thus, that "summons," which apparently was obtained on or about September 17, 2002, should be stricken as invalid.

But additionally, that new "summons" was not even served properly on PICA. In a recent filing, Universal inaccurately represented to the Court that new counsel sent the so-called new "process" to the *same address* that appeared on a certain letter PICA had sent to Universal about four (4) years ago. *See* Page 4 of Plaintiffs' Reply To Motion of Defendant Prudential Insurance Company Of America To Dismiss Or To Quash Service Of Process. *However, a cursory review of that 4-year old letter (attached as Exhibit "A" of Plaintiffs' complaint) proves this statement is wrong too;* the property to which new counsel mailed the "summons" is *not* the same as that identified on the letter new counsel references on Page 4 of the Reply, and actually is an entirely separate property. *Compare* property address on Plaintiffs' counsel's "Affidavit of Service" regarding

---

generically to a corporation. Rather, it must be delivered to an authorized agent, executive officer, or person in charge of the place of business, because such individuals are the only persons upon whom service would be effective for a corporate defendant. *See Hemmerich Industries, Inc. v. Moss Brown & Co., Inc.,* 114 F.R.D. 31 (E.D.Pa. 1987)(attempted service on out of state corporation under Pennsylvania Rule 403 requires plaintiff to establish that "the individual served was an executive officer, manager, person in charge of the place of business, or an agent authorized in writing to receive service of process for the corporation. The fact that there may have been actual notice does not affect the result."). This admitted defect is another reason that no valid service has been made on PICA.

5

PICA, dated September 3, 2002, *and* the 12/11/98 letter attached as "A" of Plaintiffs' complaint.[4]

In addition to sending it to a wrong address again, Universal again failed to address it to any executive officer, or to the registered agent for service that was expressly identified in the public information provided to Universal. Thus, this latest attempt at service, in addition to being outside of the 120-day deadline, is defective for this reason as well. The authorized agent and address for service of process on PICA is no secret-- it is readily identifiable from any cursory inquiry into publicly available files, the certification of which PICA's undersigned counsel readily obtained and has provided to Universal and to the Court. *See* Exhibit "2" (copy of the original "Certificate of Compliance" issued on 9/18/02, upon request of undersigned counsel, by the State of New Jersey, Department of Banking and Insurance, and certifying at Para. 2 thereof the publicly available information identifying the "home office of [PICA] . . . and the name of the agent therein and in charge thereof upon whom service of process may be served against [PICA].").

As for attempted service of process on Aetna, there would have been no impediment at all for Universal's original counsel, its new counsel, its in-house counsel or any other employee or agent to effect proper service of valid papers on Aetna. As they all well know, Aetna has a local place of business here in Montgomery County, just minutes from Universal's corporate headquarters and minutes from Universal's new

---

[4] Regardless of whether new counsel overlooked this fact in making this representation to the Court, the fact remains that the most Universal did to ascertain a place to serve PICA is rely on a 4-year old letterhead. Plaintiffs insisted on this position even after PICA's counsel supplied a certified copy of public information expressly identifying the service agent and address (PICA supplied this as an attachment to its 9/16/02 Motion to dismiss).

counsel's office. Nonetheless, Universal made no effort at all to accomplish proper service on Aetna under Rule 4 within the 120-day deadline, as conceded in Universal's "first" motion for extension of the deadline, filed September 9, 2002.

Moreover, Universal's new counsel, who admittedly was involved at least as of mid-August and who presumably knew of the 120-day deadline, *waited until after it expired to even file a motion to extend it* (the deadline expired on September 4, 2002; new counsel was involved sometime prior to entering a formal appearance August 22, 2002). Then, without first obtaining an extension and this Court's permission to obtain a valid summons for Aetna, Plaintiffs' new counsel improperly caused the Clerk to issue a new "summons" outside the 120-day deadline period, on September 16, 2002. *See* Exhibit "3" (9/16/02 federal court Summons to Aetna). But this otherwise invalid "summons," which should be stricken, identifies "Ronald K. Meyer" as "Plaintiffs' attorney," despite Universal arguing elsewhere that Mr. Meyer has no license to practice law. Like the many other failures by Plaintiffs, they failed to advise the Clerk not only that the 120-day deadline was expired and that a motion to extend it had not been granted as of September 16, 2002, but also that Mr. Meyer was unauthorized to practice law, and unauthorized to even file the Complaint upon which they were asking the Clerk to rely for issuing the summons on September 16, 2002.[5]

Universal is a well-funded and legally sophisticated litigant, who is certainly no ingénue to litigation and presumably has the ability to retain and direct competent counsel. Plaintiffs concede there is no excuse for the neglect of its original chosen

---

[5] Perhaps Universal's new counsel overlooked this error as well; however, the fact that Universal's new counsel accomplished issuance and service on Aetna of the new "summons" in *a single day on September 16, 2002* undermines any plausible attempts to excuse the failure to do so during the *several weeks* new counsel was involved prior to expiration of the 120-day deadline.

counsel, Ronald Meyer, and by omission, essentially concedes there is no excuse for the failure of its new counsel to follow these mandatory rules. [6]  Universal makes no attempt at all to justify its *own* neglect, as a corporate litigant who presumably is able to monitor and direct litigation through counsel, and who concedes it knew and heard nothing about the case for months.  Yet, did nothing during those months to monitor or supervise it.

At this point, Universal has no plausible excuses, and certainly no "good cause", for not complying with Rule 4 with respect to Aetna and PICA, which probably explains why Plaintiffs are so quick to try to divert blame on their original counsel and even resorting to personal attacks on opposing counsel in their second motion for extension. Such fundamental failures to perform minimal due diligence to comply with Rule 4 have routinely resulted in dismissals, even for *pro se* litigants; and a multi-billion dollar sophisticated corporate litigant like Universal should be likewise held to the rules. *See, e.g., Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1306-07 (3rd Cir. 1995) (confirming that "half-hearted efforts" by counsel to effect service of process prior to the 120-day deadline does not excuse the delay; also stating: "Even when delay results from inadvertence of counsel, it need not be excused . . . the federal plaintiff's lawyer is not to take any chances. ***Treat the 120 days with the respect reserved for a time bomb.***"); *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565 (3rd Cir. 1996) (*pro se* plaintiff's complaint dismissed for failure to follow what plaintiff attempted to downplay as mere

---

[6]  After the 120-day deadline, and after the undersigned counsel expressly advised Plaintiffs' new counsel that a summons must be obtained from the Clerk and that attorneys were not allowed to make a summons themselves, Universal's new counsel obtained a new summons (improperly, we submit, inasmuch as the 120-day deadline had already expired), and delivered it to Aetna—*all in one day*.  Clearly, Plaintiffs' new counsel could have done the same thing back in August for both Aetna and PICA, but never did so despite having several weeks prior to expiration of the deadline.  In fact, despite knowing for some time now that the complaint was never signed by an attorney authorized to practice, Plaintiffs have to this day failed to correct that known deficiency, such that there presently continues to be no complaint before this Court that is subject to the requisite due diligence and investigation under Rule 11.

"technical niceties" of Rule 4); *McGann v. State of New York*, 77 F.3d 672 (2d Cir. 1996) (*pro se* prisoner's complaint dismissed for failure to timely effect service, where the *pro se* litigant neglected to include a proper "acknowledgment of service" form with the complaint as required by Rule 4).

Court after court, in case after case, has repeatedly reaffirmed that attorneys or litigants who neglect to follow Rule 4's summons and service requirements are not to be excused for such reasons. Indeed, even *pro se* litigants are not afforded such leniency from Rule 4's requirements. *See, e.g., Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565 (3rd Cir. 1996) (*pro se* plaintiff's complaint dismissed for failure to follow what plaintiff attempted to downplay as mere "technical niceties" of Rule 4); *McGann v. State of New York*, 77 F.3d 672 (2d Cir. 1996) (*pro se* prisoner's complaint dismissed for failure to timely effect service, where the *pro se* litigant neglected to include a proper "acknowledgment of service" form with the complaint as required by Rule 4).

Under these circumstances, controlling Third Circuit precedent confirms there can be no "good cause" under Rule 4(m) to warrant any extension and the case should be dismissed. *Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1306-07 (3rd Cir. 1995) (confirming that "half-hearted efforts" by counsel to effect service of process prior to the 120-day deadline does not excuse the delay; also stating: "Even when delay results from inadvertence of counsel, it need not be excused . . . the federal plaintiff's lawyer is not to take any chances. Treat the 120 days with the respect reserved for a time bomb.").

Regrettably, rather than acknowledging the errors and dealing with them, Plaintiffs' new counsel has reacted to these failures by personally and unprofessionally attacking opposing counsel—actually going so far as making untrue *ad hominen* attacks

on counsel's integrity. *See* Plaintiffs' 9/20/02 Second Motion for Extension, Para. 14, *and* Memorandum of Law in support thereof, p. 2).

In furtherance of its unsupported 9/9/02 motion for extension, Universal also faxed a letter to chambers (which was not received by the undersigned counsel until later because Universal served its fax to Chambers by mail to the undersigned), advising that Universal's original chosen counsel, Ronald K. Meyer, supposedly "disappear[ed]", and that Universal's "last contact with Mr. Meyer was during mid-May, 2002 and we have been unable to locate him or his file." However, Universal's fax to chambers, and Universal's instant motion, offer no specific allegations explaining the alleged attempts to "locate" the supposedly "disappeared" Mr. Meyer. While alleging Universal has had no contact with Meyer since "mid-May", Plaintiffs offer no explanation as to why it did nothing to "locate" Mr. Meyer for so many months, or whether it did anything due diligence would require in monitoring and overseeing this action.

Universal's suggestion (in its fax to Chambers) that there are "unusual facts surrounding Mr. Meyer's disappearance" is, itself, unusual. After reading Universal's fax to Chambers, the undersigned Defendants' counsel simply dialed Mr. Meyer's phone number indicated on the complaint, and actually spoke to Mr. Meyer's son, who stated that although Mr. Meyer was out at the moment, he expected him to return that evening. If, as Universal alleges, it is "unable to locate" Mr. Meyer, then it is highly questionable whether Plaintiffs or their new counsel had made any reasonable efforts to do so prior to making this representation to the Court. At a minimum, Plaintiffs should plead what efforts they or their new counsel supposedly made and when they made them, so that this Court and Defendants (and any appellate body) may have an opportunity to evaluate

them for the "good cause" determination, *before* thrusting the defendants and the Court into more costly litigation over this meritless case. Absent supporting their motion for extension, however, it should be denied summarily.

As a result of Universal's apparent failure to allege specifically what, if any, excuse there may be for the failures to comply with Rule 4 by Universal itself, by Mr. Meyer and by Universal's new counsel, this Court has nothing with which to evaluate whether Universal has met its burden to show there is "good cause" for extending the deadline under Rule 4(m), or whether this is merely another case in which the counsel or litigant simply neglected to follow rules and thus the case should be dismissed. *See, e.g., Petrucelli; Ayres; McGann.*

To the extent Universal's September 19, 2002 fax to chambers also injects the fact that "Mr. Meyer has not been a member of the Pennsylvania Bar since 1996," as a tactic to divert blame, that is a red herring on the issue of whether there is "good cause" under Rule 4(m) for Mr. Meyer's and Universal's failure to serve the complaint within 120-days. Such diversions of blame should not divert this Court from the real issue. There is no allegation that Mr. Meyer was incapacitated physically or mentally from performing this simple task. In any event, to the extent Universal now wants to blame its chosen counsel (Mr. Meyer) for this lack of diligence, it is just as likely that Universal itself is independently culpable for hiring Mr. Meyer. Obviously, Universal has access to substantial legal resources. A sophisticated, well-funded party such as Universal – not defendants or this Court -- should bear the consequences of Universal's own decisions, and should not be presumed blameless.

Even more disturbing is the fact that Universal has admittedly known for at least almost two (2) months and possibly longer that Mr. Meyer was not authorized to practice law when he filed this suit. Nonetheless, to this day, Universal has not secured the signature of an authorized attorney on the complaint to vouch for the merits of this action. Respectfully, Defendants submit that the good faith due diligence required by Rule 11 would cause an attorney to voluntarily dismiss this complaint, not prosecute it and force Defendants and this Court to incur the expenses and resources of litigating its inevitable dismissal.

Plaintiffs also say they do not even have a file for their case. *See* Plaintiffs' 9/20/02 "Second Motion" for extension. If this is true, then apparently no one at Universal received or kept copies of the papers Mr. Meyer was filing for Plaintiffs, which calls into question whether Universal took any reasonable steps at all to monitor or supervise this litigation. Also, if Plaintiffs know now the complaint was filed by a lawyer not authorized to practice, it is ironic – indeed, questionable -- for new counsel to take the position that the complaint has merit and to essentially vouch for it by moving for new summonses based on it, while at the same time, claiming they have no file, and otherwise trying to reap benefit from Mr. Meyer's status.

Plaintiffs cannot have it both ways in this Court. If Mr. Meyer prejudiced Universal (or, as Universal now complains, "defrauded" Universal), Plaintiffs' remedy lies not against Aetna or PICA in this litigation.

## III.    ARGUMENT

### A.    There Is No Good Cause Under Rule 4(m) For Extending The Already Lengthy 120-Day Deadline For Effecting Service.

As set forth in the pending motions to dismiss, Plaintiffs' complaint lacks merit on its face. The complaint should never have been filed by any attorney conducting a cursory due diligence. Indeed, assuming new counsel does not voluntarily dismiss it, then under Rule 4(m), and the other grounds set forth in the motions to dismiss of Aetna and PICA, this Court should dismiss the Complaint.

To the extent Rule 4(m) permits extensions of this 120-day deadline, a proper analysis pursuant to the procedure outlined by the Third Circuit should compel this Court to deny the extension. Rule 4(m) provides:

> **Time Limit for Service.** If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

In *Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1305 (3rd Cir. 1995), the Third Circuit held that only if "good cause" exists is the District Court required to extend the 120-day deadline for service. *Id.* at 1305. Absent a finding of "good cause", the Court has discretion in deciding whether to dismiss the action or extend time for service. *Id.* The Third Circuit gave the following specific directions to District Courts, when presented with such motions for extension of the 120-day deadline:

> When entertaining a motion to extend time for service, the district court *must* proceed in the following manner. First, the district court should determine whether good cause

> exists for an extension of time. If good cause is present, the
> district court must extend time for service and the inquiry is
> ended. If, however, good cause does not exist, the court
> may in its discretion decide whether to dismiss the case
> without prejudice or extend time for service.

*Petrucelli*, 46 F.3d at 1305.

The Third Circuit also cautioned that, even if a statute of limitations would bar

refiling the action, this does not prevent the Court from dismissing the case for violating

the 120-day deadline:

> We emphasize that the running of the statute of limitations
> does not require the district court to extend time for service
> of process. Rather, absent a finding of good cause, a
> district court may in its discretion still dismiss the case,
> even after considering that the statute of limitations has run
> and the refilling of an action is barred.

*Petrucelli*, 46 F.3d at 1306.[7]

Unlike Universal and its patent disregard of the Rules, the plaintiff in *Petrucelli*

made some efforts to comply with Rule 4. Yet, the plaintiff in *Petrucelli* was found to

have not shown "good cause." There, the plaintiff employed a professional process

serving company, and served the summons and complaint on the Secretary of State of

Oklahoma, who issued a certificate of proof of service to the plaintiff. The plaintiff's

counsel was also verbally assured by the office of Secretary of State that service had been

made by the Secretary of State.

---

[7] In view of the fact that the statute of limitations is a complete defense for Defendants, it is frivolous for Plaintiffs to attempt to argue Defendants will not be prejudiced by their motion for extension. Upon dismissal of this action under Rule 4(m), if Plaintiffs were to attempt to institute yet another action, it would be even more clearly barred by applicable statute of limitations and subjected to dismissal on its face due to the later commencement date. Although Defendants need not show anything, let alone prejudice, because the burden is on Plaintiffs to show "good cause," Plaintiffs' suggestions regarding prejudice are simply wrong. Every day that this action remains pending is prejudicial to Defendants, causing them to incur more costs and resources.

The Third Circuit noted, "Petrucelli, however, made several inexcusable errors." *Id.* at 1306. Among other things, in concluding the plaintiff failed to establish "good cause" for an extension of the 120-day deadline, the Third Circuit noted: "A prudent attorney exercising reasonable care and diligence would have inquired into the matter further when it was obvious that the acknowledgment form was not forthcoming." *Id.* at 1307. The Third Circuit explained:

> We have previously held that reliance upon a third party or on a process server is an insufficient basis to constitute good cause for failure to timely serve, and is also an insufficient basis for granting an extension of time to effect service. [citations omitted]. We have also held that " 'half-hearted' efforts by counsel to effect service of process prior to the deadline do not necessarily excuse a delay, even when dismissal results in the plaintiff's case being time-barred due to the fact that the statute of limitations on the plaintiff's cause of action has run." [citation omitted].

*Petrucelli*, 46 F.3d at 1307.

The Third Circuit explained further that "[e]ven when delay results from inadvertence of counsel, it need not be excused." *Petrucelli*, 46 F.3d at 1307. The Court cautioned: "Further, we have previously cautioned that, "[t]he lesson to the federal plaintiff's lawyer is not to take any chances. Treat the 120 days with the respect reserved for a time bomb." *Id.*

Other Courts confirm that compliance with Rule 4 is not some "technicality" that Plaintiffs can so casually regard. Universal improperly trivializes Rule 4 as a mere "technicality."[8] But the caselaw has made clear time and again, including caselaw of the Third Circuit, that these rules are ***not*** merely "technical niceties". *See, e.g., Ayres v.*

---

[8] In Plaintiffs' Reply To Motion Of Defendant Prudential Insurance Company Of America To Dismiss Or To Quash Service Of Process, page 1, Plaintiffs characterize this as "a technical argument by Defendant's counsel concerning the form of summons." *See also*, page 8 of Plaintiffs' Memorandum in support of their Reply ("PICA relies on a technical objection that the Clerk did not sign the summons").

*Jacobs & Crumplar, P.A.*, 99 F.3d 565 (3rd Cir. 1996) (*pro se* plaintiff's complaint dismissed for failure to follow what plaintiff attempted to downplay as mere "technical niceties" of Rule 4); *McGann v. State of New York*, 77 F.3d 672 (2d Cir. 1996) (*pro se* prisoner's complaint dismissed for failure to timely effect service, where the *pro se* litigant neglected to include a proper "acknowledgment of service" form with the complaint as required by Rule 4). Universal should not be treated differently than other sophisticated litigants in this Court, and should not be allowed to trivialize Rules that everyone else is required to follow.

"A showing of good cause [under Rule 4(m)] requires at least 'excusable neglect' –good faith and some reasonable basis for noncompliance with the rules. [citations omitted]. When counsel has ample notice of a defect in service, does not attempt an obvious correction, and chooses to defend the validity of the service attempted, there is no good cause for the resulting delay if that method of service fails." *Adams v. AlliedSignal General Aviation Avionics*, 74 F.3d 882, 887 (8th Cir. 1996) (finding that where public information and review of the rules would have revealed how to effect proper service, "plaintiffs' insufficiency of service was willful, not inadvertent").

Tellingly, instead of showing "good cause" and the absence of its own neglect, Plaintiffs' recent 9/20/02 "Second Motion" for an extension resorts to unprofessional name calling against the undersigned counsel and blaming others for Universal's and its counsel's failures. Universal has chosen this strategy to justify its own failures and otherwise blame others for them. The Court in *Adams* stated: "At some point, a litigant must bear the consequences of conscious strategic or tactical decisions of this kind."

*Adams*, 74 F.3d at 887. Here, the proper consequences is dismissal of this action under Rule 4(m) and pursuant to the other grounds set forth in the pending motions to dismiss.

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, PICA and Aetna request that the Court deny Plaintiffs' "second motion" to extend the time for service. Further, to the extent Plaintiffs contend there is any validity to the *new* summonses they obtained from the Clerk on September 16 and 17, 2002, after the 120-day deadline, the Court should strike them.

Respectfully submitted,

OF COUNSEL:
ELLIOTT REIHNER SIEDZIKOWSKI
  & EGAN, P.C.

/s/Frederick P. Santarelli
JOHN M. ELLIOTT
FREDERICK P. SANTARELLI
Union Meeting Corporate Center
925 Harvest Drive
Blue Bell, PA  19422
(215) 977-1000

Counsel for Defendants, Aetna Inc. and
Prudential Insurance Company of America

DATED:  October 7, 2002

## CERTIFICATE OF SERVICE

The undersigned certifies that on this day a copy of the foregoing is being served upon the persons and in the manner indicated below:

### U.S. Postal Service, First Class Mail

Ronald K. Meyer, Esquire
303 W. Lancaster Avenue, #101
Wayne, PA 19087
(610) 889-9339
(Counsel for Plaintiffs)


William J. Brennan, Esquire
Butera, Beausang Cohen Brennan
630 Freedom Business Center
Suite 212
King of Prussia, PA 19406
(610) 265-0800
(Co-counsel for Plaintiffs)

/s/Frederick P. Santarelli
FREDERICK P. SANTARELLI

DATED:  October 7, 2002

# EXHIBIT 1

# BUTERA ♦ BEAUSANG ♦ COHEN ♦ BRENNAN
A T T O R N E Y S     A T     L A W

H. Kenneth Butera
Michael F. Beausang, Jr.
Stuart N. Cohen
William J. Brennan
Kevin A. Palmer
N. Curtis Ward
Michael H. Malin, Jr.
Denise A. Ciampitti
Amanda J. Davidson
Walter A. Reed

September 27, 2002

Frederick P. Santarelli, Esquire
Elliott Reihner Siedzikowski & Egan, P.C.
925 Harvest Drive, Suite 300
P.O. Box 3010
Blue Bell, PA 19422-3010

Re:    Universal Health Services, Inc. v. Aetna, Inc. and Prudential Insurance
       Company of America; CCP Mont. Co. No. 02-19929

Dear Mr. Santarelli:

As a courtesy, we are informing you of the filing of a Summons in Montgomery County at No. 02-19929. The Summons was filed on September 25, 2002 and will be served in accordance with the Pennsylvania Rules of Civil Procedure. This Summons is in the nature of a saving action. It is not our intention to pursue this matter at this time unless it is determined that the federal action should be dismissed or limited for failure of service or that the federal courts have had no jurisdiction over claims by UHS *ab initio*. Obviously, you may rule us to file a complaint and we will do so. We hope you will not unnecessarily increase expenses for all parties by taking such action.

A copy of the Summons is enclosed for your file.

Please feel free to call me with any questions.

Very truly yours,

William J. Brennan

WJB:eab
Enclosure

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

UNIVERSAL HEALTH SERVICES, INC.                :
367 South Gulph Road                           :        NO. 02- *1929*
King of Prussia, PA 19406-0958                 :
                                               :        Civil Action
                        vs.
AETNA, INC.                                    :
2201 Renaissance Blvd., F245                   :
King of Prussia, PA 19406  and                 :
PRUDENTIAL INSURANCE COMPANY OF AMERICA
55 North Livingston Road                       :
Roseland, NJ 07068-1732

02 SEP 25 PM 1:12

OFFICE OF THE
PROTHONOTARY
MONTGOMERY COUNTY PA.

PRAECIPE FOR SUMMONS

TO THE PROTHONOTARY:

    Issue Summons in Civil Action in the above case.

    Writ of Summons shall be forwarded to ☐ Attorney ☒ Sheriff

_____
Signature of Attorney
William J. Brennan
Butera, Beausang, Cohen & Brennan
630 Freedom Business Center, Suite 212
King of Prussia, PA 19406
Name/Address/Telephone Number of Attorney
ID Number:   23373

Date:   September 25, 2002

* * * * *

SUMMONS IN CIVIL ACTION

TO:   AETNA, INC.

    You are notified that the Plaintiff(s) has/have commenced an action
    against you.

SEAL OF
THE
COURT

_____
WILLIAM E. DONNELLY
Prothonotary

Date:   9/25/02                    by:   _____
                                         Clerk/Prothonotary

Addresses must be included for all parties.

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

UNIVERSAL HEALTH SERVICES, INC.          :          NO. 02-_1992 9_
367 South Gulph Road                     :
King of Prussia, PA 19406-0958           :          Civil Action

                          vs.            :
AETNA, INC.                              :
2201 Renaissance Blvd., F245             :
King of Prussia, PA 19406  and           :
PRUDENTIAL INSURANCE COMPANY OF AMERICA
55 North Livingston Road                 :
Roseland, NJ 07068-1732

                    PRAECIPE FOR SUMMONS

TO THE PROTHONOTARY:

        Issue Summons in Civil Action in the above case.

        Writ of Summons shall be forwarded to [xx] Attorney [ ] Sheriff


                            _William J. Brennan_ (signature)
                            Signature of Attorney
                            William J. Brennan
                            Butera, Beausang, Cohen & Brennan
                            630 Freedom Business Center, Suite 212
                            King of Prussia, PA 19406
                            Name/Address/Telephone Number of Attorney
Date: September 25, 2002     ID Number:  23373


                    * * * * *

               SUMMONS IN CIVIL ACTION

TO: PRUDENTIAL INSURANCE COMPANY OF AMERICA

        You are notified that the Plaintiff(s) has/have commenced an action
        against you.

                            _William E. Donnelly_ (signature)
SEAL OF                     WILLIAM E. DONNELLY
  THE                          Prothonotary
  COURT

Date: __9/25/02__           by: _Arlene Eckert_ (signature)
                                    Clerk/Prothonotary

        Addresses must be included for all parties.

8/90

# EXHIBIT 2



## State of New Jersey
### DEPARTMENT OF BANKING AND INSURANCE
### OFFICE OF SOLVENCY REGULATION
PO BOX 325
TRENTON, NJ 08625-0325

JAMES E. MCGREEVEY
*Governor*

Tel (609) 292-5350
Fax (609) 292-6765

HOLLY C. BAKKE
*Commissioner*

CERTIFICATE OF COMPLIANCE
September 18, 2002

I, Holly C. Bakke, Commissioner of Banking and Insurance of the State of New Jersey, do hereby certify, depose and say that:

1.  The Prudential Insurance Company of America, Newark, New Jersey, is a stock life insurer organized under the laws of the State of New Jersey on April 3, 1873, and commenced business in said State on October 13, 1875. Said Company was originally formed as a stock life insurer, converted to a mutual life insurer in 1943, and converted to a stock life insurer in 2001;

2.  The home office of said Company is located at 751 Broad Street, Newark, New Jersey 07102, and the name of the agent therein and in charge thereof upon whom service of process may be served against said Company is Susan L. Blount, Secretary;

3.  Said Company is presently authorized to transact in New Jersey the business of life insurance; health insurance; and writing annuity contracts, being the kinds of insurance specified in N.J.S.A. 17B:17-3; N.J.S.A. 17B:17-4, and N.J.S.A. 17B:17-5, a certified copy of the relevant sections of the statute is attached for your information, and also such other insurance and reinsurance as may be permitted under the laws of the State of New Jersey to be written by an insurer authorized to do the kinds of business above mentioned. Said Company is also authorized to write in New Jersey "Variable Contracts" being the kinds of insurance specified in N.J.S.A. 17B:28-1 et seq.;

4.  Said Company is in good standing and having complied with all the requirements of the New Jersey conversion statutes N.J.S.A. 17:17C-1 et seq. is authorized to transact the business of insurance in the State of New Jersey in accordance with all the provisions of its charter and the laws of this State as provided in its Certificate of Authority reissued by this Department on December 5, 2001;

5.  The effective date of the plan of reorganization pursuant to which the Company converted from a mutual life insurer to a stock life insurer is December 18, 2001. As reported by the Company, subsequent to the conversion, the Company will have a total capital and surplus of $4,502,280,512.

I further certify that The Prudential Insurance Company of America is not precluded by its charter or the laws of this State from engaging in the classes of business stated above in states other than New Jersey, upon compliance with the laws of such other states.

IN WITNESS WHEREOF, I have here unto set my hand and affixed my Official Seal, at Trenton, the day and year first above written.

*Holly C. Bakke*

Commissioner of Banking and Insurance

2

# EXHIBIT 3

## SUMMONS IN A CIVIL ACTION

| UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA | |
|---|---|
| UNIVERSAL HEALTH SERVICES, INC.; UNIVERSAL HEALTH SERVICES, INC. FLEXIBLE BENEFIT PLAN, UHS DENTAL COMPONENT <br><br> v. <br><br> AETNA, INC. | CIVIL ACTION NO. 02-CV-2715 <br><br> TO: (NAME AND ADDRESS OF DEFENDANT) <br> AETNA, INC <br> 2201 RenAIssANce BLVD <br> F245 <br> KING OF PRUSSIA, PA <br> 19046 <br><br> **ALIAS SUMMONS** |

**YOU ARE HEREBY SUMMONED** and required to serve upon

Plaintiff's Attorney (Name and Address)

Ronald K. Meyer
303 W. Lancaster Ave #101
Wayne, PA 19087

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

| Michael E. Kunz, Clerk of Court | Date:  September 16, 2002 |
|---|---|
| (By) Deputy Clerk <br><br> F. Hernandez | |